## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LAUREN GARNICK, TSHACHA
ROMEO, and COREY HANVEY, Individually
and on behalf of all others similarly situated,

      Plaintiffs,

                                    Case No: 8:20-CV-01474-MSS-TGW

  v.

VERIZON CONNECT FLEET USA LLC,

      Defendant.

_____.

## PLAINTIFFS' FIRST AMENDED FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT FOR OVERTIME WAGES

Plaintiffs, LAUREN GARNICK (hereinafter as "Garnick" and/or "Plaintiff"), TSHACHA ROMEO (hereinafter "Romeo" and/or "Plaintiff"), and COREY HANVEY (hereinafter as "Hanvey" and/or "Plaintiff"), individually, and on behalf of all others similarly situated who consent to their inclusion in a collective action, sues Defendant, VERIZON CONNECT FLEET USA LLC., (f/k/a Fleetmatics USA, LLC) (hereinafter as "Verizon" and/or "Defendant") for violations of the FLSA pursuant to 29 U.S.C. 216(b), of the Fair Labor Standards Act (the "FLSA") and states as follows:

### INTRODUCTION

1.     Defendant in this case has willfully FAILED to pay overtime wages to all Inside Sales Representatives (ISR) employees working under various job titles, some self-created, others created by the company such as: Business Development Representative (BDR), Business Development Managers (BDM), Account Managers, Closers, Consultants, Fleet Managers,

Development Managers, Associate Sales Partners or Sales Partners (aka Closers), Specialists, and other interchangeable or related job titles, all of which are now or were at one time, used to identify employees working as non-exempt, hourly paid inside sales representatives. All the members of the putative class were paid on an hourly, non-exempt status with a bonus plan based upon achieving a percentage to goal.

2.      Historically, Defendant here purchased Fleetmatics USA, LLC. for $2.4 billion dollars in 2016, to commence or gain access to the telematics industry and sell GPS tracking software and products focused on fleet management, mobile workforce solutions and IoT.

3.      It's not a mere coincidence that Defendant continues to subject employees to the same unlawful pay practices that plagued Fleetmatics USA, LLC., and which resulted in a settlement on November 3, 2016, in the case of <u>Gillard, Stramiello and Pate v. Fleetmatics USA LLC</u>, Case no. 8:16-cv-00081, DE 70, in the sum of $2,102,250.00.

4.      Plaintiffs, GARNICK, ROMEO AND HANVEY, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, sue Defendant, VERIZON FLEET  USA, LLC pursuant to 29 U.S.C. 216(b), of the Fair Labor Standards Act (the "FLSA") and states as follows:

5.      Plaintiffs herein commence this legal action against Defendant for willful violations of federal wage and hour laws by and related regulations on behalf of all similarly situated current and former employees of Defendant who worked anytime in the preceding three (3) years to the present and continuing.

6.      Pursuant to national, common policy and plan, Plaintiffs and the class of similarly situated current and former employees, have worked under company assigned or self created job

titles, all used to describe the same inside sales position, including but not limited to the following: "Account Executive", "Business Development Representative", "Specialist", "Business Development Consultant", "National Account Manager", "Fleet Consultant", "Senior Business Developer", Business Coordinator", "Associate Sales Partner", "Sales Partner", "closer" and "Business Developer".   These titles are all used to describe persons working as Inside Sales Representatives, selling products and services on a non-retail basis to businesses and commercial enterprises. Plaintiffs, and the class of similarly situated employees, were unlawfully not compensated a premium for all hours worked over forty (40) in each and every workweek by a scheme and plan of Defendant to evade the overtime wage laws and save many millions of dollars in labor costs to the detriment and harm of Plaintiffs and all other Inside Sales Representatives.

7.      Indeed, just examining the complaint in Gillard, et. al. v. Fleetmatics USA LLC, Verizon, knew what had been going on, and had knowledge of this case at the time of the settlement with Fleetmatics USA, LLC., as clearly evident by the timing of the purchase of Fleetmatics USA, LLC., in the same calendar year.

8.      However, after the purchase, it was "business as usual", permitting Inside Sales Representatives to suffer to work off the clock and to work without being paid a premium for all hours worked at rates of time and one half their regular rates of pay.

9.      Just as Fleematics USA, LLC., failed, as required by the FLSA to contemporaneously track and record the work hours of its employees, Defendant VERIZON maintained the same unlawful practices.

10.     Defendant did not institute during the years 2017, to the present, any actual time tracking or recording system for the work hours of the Inside Sales Representatives.

11.     While Defendant did have some system for hourly employees to report work hours, the Defendant still violated 29 CFR Part 516. Alternatively, even if later a Court concludes the system used satisfies 29 CFR Part 516 record keeping requirements, they were wholly inaccurate and unreliable as Defendant did not track and record the actual times employees started working, took breaks, and left for the day and even managers just entered work hours for and on behalf of BDR.

12.     Defendant absolutely knows that Inside Sales Representatives routinely worked overtime hours, as managers and supervisors witnessed the extra hours, encouraged and even pressured Inside Sales Representatives to work as many hours as possible to hit quotas and meet goals.

13.     Moreover, Defendant never asked employees to leave after the shift ended, prohibited them from working prior to the shift time, and witnesses and knew that employees, including Plaintiffs, routinely worked through some or all of the (1) one hour provided meal break as to which Defendant took an automatic  one (1) hour deduction front the total work hours each day, regardless of whether Inside Sales Representatives took such uninterrupted meal breaks of 20 minutes or simply worked throughout the entire meal break time.

14.     Defendant simply turned a blind eye to all the off the clock work for numerous reasons, while pressuring, coercing, intimidating and encouraging Inside Sales Representatives to work as many hours as necessary to hit their quotas and production goals.

15.     Defendant has willfully failed to pay Plaintiffs, and all similarly situated persons, in accordance with the Fair Labor Standards Act (FLSA).  Specifically, Plaintiffs, and similarly situated employees, were not paid time and a half of their regular rate pay for all hours worked in excess of forty (40) hours per week, nor paid a premium for all overtime hours worked.

16.     Plaintiffs, and the class of similarly situated employees, did not and currently do not perform work that meets the definition of any exemption under the FLSA, and the Defendant's pay practice are not only clearly unlawful, but UNFAIR as well.

17.     In this pleading, the term "Inside Sales Representative" means any employee of Defendant working under the various titles of:  "Account Executive", Business Development Representative" (BDR), "Closer", "Associate Sales Partner", "Sales Partner", "Specialist", Business Development Consultant", National Account Manager, Regional Account Executive, Fleet Manager, Senior Business Developer, Business Developer, Business Coordinator, Specialist Solutions Consultant or any other title or position, where employees perform substantially the same work as an ISR (discovery may reveal additional job titles and employees that should be included).  Inside Sales Representatives (ISR) in this class make inbound and/or outbound phone (cold calls) calls, research the internet and either make internet presentations or demonstrations or schedule this for others such as closers to finalize and consummate the sales.

18.     In this pleading, "Defendant" means the named Defendant and any other subsidiary or affiliated and wholly owned corporation, organization or entity responsible for the employment practices complained of herein (discovery may reveal additional Defendants that should be included).

19.     The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiffs bear the burden of pleading, proof, or persuasion.  Plaintiffs reserve all rights to plead in the alternative.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because this action involves a federal question under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

21.     This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

22.     This Court has personal jurisdiction over this action, because the Defendant continuously conducts substantial business in Tampa, Hillsborough County, Florida at fixed offices, and a substantial amount of the damages at issue occurred in Hillsborough County, Florida.

23.     Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because the parties reside in this district and because a substantial part of the events giving rise to the claims occurred in this District.

## THE PARTIES

24.     Plaintiff, LAUREN GARNICK resides in Tampa, Florida.  She was hired by (Fleetmatics) Fleetmatic USA Holding, LLC., in December 2017, as a Business Development Representative working in Phoenix, Arizona, and is currently employed as a Business Development Representative (BDR) working from the company's Tampa office.

25.     After Defendant VERIZON bought Fleetmatics, there was a seamless transition to becoming Verizon employees without any interruption.

26.     In April 2018, Plaintiff Garnick received her first paycheck directly from Verizon, but all preceding paychecks and work was on behalf of Fleetmatics.

27.     In June 2019, Plaintiff Garnick transferred to the Tampa office and continued her work as a Business Development Representative, located at 7701 East Telecom Parkway, Temple Terrace, Florida 33637.

28.     Plaintiff ROMEO was employed as a BDR working for Defendant from the Tampa office from September 2018 until June 2020.

29.     Plaintiff Romeos' primary job duty as a BDR is to develop qualified "warm" leads for other people in the company to attempt to sell Verizon telematics products and services to, usually by such persons called "closers".  These same job titles and work procedures were carried over by Defendant from Fleetmatics business practices.

30.     Plaintiffs Garnick and Romeo were provided leads and made outbound and inbound calls and sent out emails to solicit businesses to attend demonstration appointments of the Verizon telematics and GPS tracking products and services with "closers" or Associate Sales Partners/Sales Partners.

31.     Plaintiff HANVEY was employed with Defendant as a "Closer" from 2014 until approximately May 2018 working from the Charlotte, New Carolina office.

32.     The primary duty and function of the Closer or Sales Partner is to attend appointments for demonstrations with potential business customers, and attempt to close the sale,

make the sale of the Defendant's telematics products and services, namely GPS vehicle tracking and related services.

33.    All Sales Partners, Associate Sales Partners (aka, fka "Closers"), including Plaintiff Hanvey, did not have the discretion and judgment to unilaterally make pricing decisions, nor did they create their own marketing plans for the Defendant's products and services.

34.    All Sales Partners (aka "Closers"), had to submit weekly time and just like BDR, were prohibited from submitting more than forty (40) hours and discouraging from claiming overtime wages.

35.    Defendant offered no explanation as to why Sales Partners, (aka "Closers") had to adhere to a corporate schedule, submit time, and while prohibited from submitting overtime hours, were not paid for overtime hours.

36.    Plaintiff Hanvey, like the other Sales Partners (aka "Closers"), routinely worked overtime hours throughout their employment term without regard to whether they should have been paid a premium for all the overtime hours worked.

37.    Defendant maintained a clear silence as to the Closer's entitlement to overtime pay, and a conscious and blind indifference to their obligations to compensate Closers, including Plaintiff Hanvey for their overtime hours worked.

38.    At no time did Defendant tell Plaintiff Hanvey and other Closers, or put in writing that they were classified as exempt from overtime wages under the FLSA under any exemption under the law' moreover, no where on the Defendant's payroll, time records, or paystubs is there

record that the Defendant treated Closers as exempt from overtime wages for any representative period of time.

39.     At all times material, Plaintiffs were employees of Defendant during the term of their employment as contemplated by 29 U.S.C. § 203.

40.     Regardless, Defendant classified Plaintiffs and all others similarly situated as non-exempt, hourly paid employees.

41.     Plaintiffs were paid a base hourly rate of pay.  In addition, all BDR and Closers were placed on a monthly bonus structure based upon percentage to goal performance, such that if they 100% met the goal or quota set by management there was a maximum sum in bonus money they could earn, and less in bonus money using a pro rata percentage of the sales goals met.

## DEFENDANT, VERIZON CONNECT FLEET USA LLC

42.     Defendant, VERIZON CONNECT FLEET USA LLC. (hereinafter Defendant and/or "Verizon"), is a Florida Limited Liability Corporation, and a wholly owned subsidiary of VERIZON COMMUNICATIONS INC., a publicly traded corporation on the NYSE under the symbol VZ, has a principal place of business is at 1100 Winter Street, Waltham, Massachusetts 02451, and at all times material hereto, has routinely and consistently conducted business in the State of Florida through its Temple Terrace, Florida office, located at 7701 East Telecom Parkway, Temple Terrace, Florida 33637.  Defendant may be served through its Registered Agent for service of process, CT Corporation System, at 1200 South Pine Island Road, Plantation, Florida 33324 and/or its physical offices in Temple Terrace, Florida.

43.     As stated by Defendant on their website, Defendant is a company which offers: "Guiding a connected world on the go by automating, optimizing and revolutionizing the way people, vehicles and things move through the world".

44.     Defendant has eights (8) offices in the US, including: Chicago, Atlanta, Charlotte, Waltham, Boston, Irvine, San Diego, and Temple Terrace, along with one (1) office in Toronto.

45.     Defendant is an employer within the definition of the FLSA, has revenues exceeding $500,000 annually in all applicable time periods, and is involved in interstate commerce.

46.     Defendant provides fleet operators (companies or businesses with numerous vehicles) with an internet based system that enhances workforce productivity through real time vehicle tracking, route optimization, job dispatch, and fuel usage monitoring.

47.     Defendant is a direct competitor of Fleetcor, d/b/a "NexTraq" and both companies serve the same commercial fleet clients with telematics solutions, GPS and tracking.

48.     Competitors who also employ similar ISR such as Fleetcor and NEXTRAQ, have been caught numerous times stealing wages, and violating the FLSA for inside sales reps through numerous unlawful pay practices, and when factoring in the *Gillard et al v. Fleetmatics* case settlement for ISR, it is unlikely that Defendant, Verizon has not already had more than enough reasons to have been aware of the unlawful pay practices complained of herein and continued to act with reckless disregard for the FLSA, if not willfully continuing to violate the FLSA.

49.     Thus, Defendant had a duty to have investigated, studied, audited, and assessed its pay practices and FLSA duties and obligations and determine if its in compliance, and the failure

to have done so subjects it to payment of liquidated damages and a three (3) year statute of limitations for FLSA violations.

## FACTUAL AND COLLECTIVE ALLEGATIONS

50.     This collective action arises from an longstanding and continuing wrongful scheme by Defendant to: a) willfully fail to accurately and properly track and record the work hours of ISR, and b) willfully refuse to pay overtime wages to a large class of Inside Sales Representatives who Defendant knows or should have known, were working off the clock and working overtime hours without being paid for all such hours.

51.     Plaintiffs brings this suit individually, and on behalf of all similarly situated persons composed of the following Class members:

> **All employees working as Inside Sales Representatives under the titles of: Account Executive, Account Manager, Consultant, Business Development Representative, Closer, Associate Sales Partner, Sales Partner, Sales Representative, team leader, pod leader, or any other job titles used to describe non-exempt, inside sales positions, who are currently employed by or were previously employed with Fleetmatics USA, LLC or Verizon Connect Fleet USA LLC within the U.S. and its territories, within the past three years preceding the filing of this lawsuit to the present.**

52.     Plaintiffs are able to protect and represent the Collective or putative Class, and they are willing and able, and consent to doing so.   Plaintiff Garnick also worked in two of Defendant's offices and is familiar with the pay practices, company policies and procedures going back to when the company was known as Fleetmatics.

53.     Plaintiffs have routinely worked more than forty (40) hours in workweeks throughout their term of her employment with Defendant.

54.     In both offices Plaintiff Garnick worked at, Scottsdale and Tampa/Temple Terrace, Defendant required Business Development Representatives and Closers to work nine (9) hour day shifts, forty-five (45) hour work weeks at a minimum.

55.     Each day, the company has a standardized one (1) hour lunch break, typically between 12:30 pm and 1:30 pm in Tampa, and 12 pm to 1:00 pm in Charlotte where all BDR and closers are expected and required to use this set one (1) hour time for a meal break or just for break time, without deviation.

56.     Thus for each nine (9) hour work day scheduled and assigned by Defendant, the company automatically deducts one (1) hour of pay for each day for this break and informs BDR, Closers and other Inside Sales Representatives to claim and report ONLY eight (8) hours in total if they worked the full shift of nine (9) hours, regardless of whether Plaintiffs or all other sales employees took 5 minutes of uninterrupted meal break, 10 minutes, or no work uninterrupted break at all.

57.     In the Arizona office (now closed), the Charlotte office (now closed and ISR working solely remotely as of June 2020), and the Tampa office, ISR, including Plaintiffs, routinely worked through meal breaks, sitting at their desks and working while eating, or just working through the one (1) hour allotted time in order to attempt to meet sales goals and quotas, all of which was known to management.

58.     Plaintiffs allege for themselves, and on behalf of the putative class who elect to opt-in to this action, that they are entitled to unpaid wages from Defendant for overtime work for which they did not receive overtime premium pay, as required by the FLSA, including for all meal break times they worked through without pay.

59.     Defendant employs, upon information and belief and investigation, an estimated 350 or more Inside Sales Representatives working from numerous offices, including: Atlanta, Georgia; Boston, Massachusetts; Temple Terrace, Florida; Chicago Illinois; Charlotte, North Carolina; San Diego, California; Irvine, California; and Toronto, Canada.   Upon information and belief, Defendant may also now have, or had within the relevant three (3) year class period, employed other Inside Sales Representatives working from their homes or other offices in other states, such as New York, and have employed upwards of 1200 or more during the preceding three (3) years.

60.     Upon information and belief, the Inside Sales Representatives in all offices under the various titles, are all paid under a common pay or compensation plan of a base pay and a percentage to goal bonus structure.

61.     All BDR, Closers and all other Inside Sales Representatives under the various job titles also perform their job duties in a uniform, similar manner; and all are supervised and managed according to the same national standards and uniform policies and procedures set by the Defendant applicable to all offices.

62.     All Inside Sales Representatives within this putative class here were treated and classified by Defendant as either hourly, nonexempt employees or salaried, non-exempt employees.

63.     All Inside Sales Representatives were purposefully misled by Defendant to believe it was, and is, lawful to take one (1) hour off of the forty-five (45) hour work schedule for a mandatory meal break deduction without regard or concern whether the employees ever took the full one hour break or worked through the allotted one (1) hour meal breaks.

64.     Said differently, Defendant failed to provide any mechanism and real opportunity for Plaintiffs and all others Inside Sales Representatives to claim the times they worked through the one (1) hour meal breaks or to log in and out for breaks.

65.     The actual work hours of all the Inside Sales Representatives were never recorded by the Defendant.  Instead, they instructed employees one time, every two weeks, to simply put on the payroll database or website, eight (8) hours for each full day worked, and forty (40) hours for each week unless they missed a day.

66.     The company time reporting system as well is pre-populated with a total of eight (8) hours for each day and forty (40) hours for each workweek, and no boxes or lines to put in break times started or ended, nor any place to log in the actual times they started working each day or ceased working at the end of the day.

67.     Moreover, all Inside Sales Representatives were routinely advised subsequent to their acceptance of the offer to work for the Defendant, that the sales positions are "not 9 to 5" (40 hour per week jobs).

68.     The Defendant maintains a companywide policy throughout the relevant three (3) year class period of willfully refusing to pay overtime wages for all overtime hours worked for Inside Sales Representatives despite clear knowledge Inside Sales Representatives have worked and continue to work overtime hours which  are unreported and off the clock.

69.     As per the company pay stubs and electronically submitted timesheets, it's generally, typically and almost always just going to say forty (40) hours worked each week and eighty (80) hours for the two (2) week period.

70.     Upon information and belief, all Inside Sales Representatives are supervised by Directors and other managers, who very closely monitor performance, scrutinize sales representatives and their performance, metrics, such as phone calls and production and report results to the corporate office under a structured, corporate controlled manner.  Defendant has micro-managed all Inside Sales Representatives.

71.     All Inside Sales Representatives handling outbound calls, primarily those with titles of BDR are expected to make a certain number of daily phone calls, and have sales goals or quotas for appointments for demonstrations of the telematics GPS tracking produces and services with businesses set up for the Closers, which if not met, subject them to disciplinary action, including termination of employment.

72.     All Closers similarly have sales goals and quotas related to the number of appointments/demonstrations held and sales.  The Closers' primary job duty is to sell the GPS tracking units, attend appointments set by the Business Development Representatives with businesses, and demonstrate the products over the internet.

73.     Some Inside Sales Representatives call upon potential new clients or customers, and others, upon information and belief and from Defendant's job descriptions, are assigned a group of current customers or clients to call.  In all cases, the primary job duties of all Inside Sales Representatives are to sell and the sales take place generally over the telephone and internet.

74.     The overtime wage provisions set forth in FLSA §207 apply to Defendant, and it engages in interstate commerce.  Indeed, at all relevant times, Defendant engaged in interstate

commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203.

75.    The actual job duties performed by the proposed putative class of Inside Sales Representatives do not satisfy the elements of any exemptions within FLSA §213, as all perform routine jobs whose primary job duty was production, setting appointments for others to attempt to sell GPS tracking products or other products or services, or actually attending the appointments and making the sales pitches and demonstrations of the products and services.

76.    Plaintiffs, as well as the members of the putative class of similarly situated persons routinely worked through part or all of their lunch breaks, worked prior to or after the set and standardized nine (9) hour daily shift times, and also performed other work incidental to their job duties by working at home or outside the office making or receiving phones calls, sending or receiving and reading emails without being paid for all these additional work hours.

77.    Plaintiffs routinely engaged in making or receiving telephone calls, reading or sending emails after business hours and on weekends, as to which Defendant did not provide any guidance or opportunity to submit or claim these additional work hours.

78.    Many sales calls and demonstrations had to take place in the evening hours lasting after the ending shift time to accommodate business owners and their officers so as not to disrupt their business during standard daily working hours.

79.    Plaintiffs routinely commenced working prior to the scheduled shift times of 8:30 am until 5:30 pm, or 7:30 am until 4:30 pm), and now since June 2020, in Tampa, the schedule of 8:00 am until 5pm.

80.     Plaintiffs, and all other similarly situated employees are currently or have previously been covered under FLSA §207.

81.     Pursuant to FLSA §207, Defendant, as the employer of Plaintiffs and other similarly situated ISR, was and is required to pay one and one-half times each employee's hourly rate for hours worked in excess of forty (40) hours per week.

82.     Defendant is fully aware that employees work through lunches come in early and stay late, as management can clearly see them doing so and encourage employees to do so and take advantage of the additional time to meet production goals and quotes.

83.     Defendant was also fully aware that the nature of the position required and did involve BDM/BDR making and receiving telephone calls and sending and receiving emails outside the office, and at times accessing the CRM salesforce system/programs.

84.     Defendant also required a mandatory number of phone calls or dials, demonstrations and talk times and appointments set, all of which produced a very stressful, boiler room type environment and which combined with the threats of discipline and termination of employment for not meeting production goals and requirements, fostered the off the clock work by BDM/BDR and other ISR.

85.     Plaintiff, Garnick excelled in their production and job performance, and it was no secret to Defendant and other coworkers that she worked extra hours beyond the shift times, coming in early, staying late and working through meal breaks in order to excel and reach goals.

86.     Upon information and belief, all of the top performing Inside Sales Representatives routinely worked overtime and extra hours and there is a known direct

correlation between the number of hours worked and the production and productivity of the sales employees.

87.     Defendant however, maintained a De Facto policy against BDR/BDM reporting overtime hours, or complaining about not being paid for all overtime hours worked each day and each week under fear and threat of scrutiny being brought upon them for incurring the overtime hours.

88.     Defendant even suggested to ISR that all overtime had to be "preapproved" by several levels of management, and thus to many it was futile to even ask if they were not already meeting and exceeding goals and quotas.   Defendant's policy was circular, and the proverbial chicken and egg type game of do not claim or seek to claim overtime without approval and without having met or exceeded goals and quotas.

89.     Thus, even when Plaintiff Garnick did have an opportunity to claim and report overtime hours, from fear of reprisal, she limited the hours reported, even though she routinely worked through breaks, coming in early, doing work outside the office.

90.     Plaintiff Romeo however, throughout the term of his employment, had a manager who  filled in the bi-weekly online timesheets for himself and the BDR simply putting in eight (8) hours for each day they were there working and forty (40) hours for each week, without regard of the actual hours worked, and without crediting any overtime hours at all, including taking off 1 hour of the 9 hour day for lunch breaks without regard to whether they worked through the 1 hour or took any of it for an uninterrupted break.

91.     Similarly, one or more managers in Charlotte likewise simply input 80 hours of work for each bi weekly period for BDR and  sales partners or closers.

92.     The Company maintained a code of silence when it came to the issue of overtime hours and overtime wages, with literally no meetings or discussions about the time tracking requirements of the FLSA, or how to submit and claim overtime hours worked both inside and outside the office, including the 1 hour meal breaks.

93.     Defendant maintained a culture, environment of discouraging and intimidating BDR from submitting, or reporting overtime hours worked because if they were not the top producers or meeting all quotas and goals, they would be subjected to a high level of scrutiny and face the ire of management.

94.     Defendant does not presently, and has not throughout the relevant three (3) year class period,  properly clocked, tracked or recorded the actual working hours of each Inside Sales Representative in all of their offices.

95.     All Inside Sales Representatives worked a similar schedule of five (5) days per week, typically from about 8:30 a.m. until 5:30 p.m., or in some offices, 7:30 a.m. until 4:30 p.m., or 8:00 a.m. until 5:00 p.m.  All shifts are nine (9) hour days with one hour allotted for lunch.

96.     Defendant at times, commanded and made it mandatory for Inside Sales Representatives to come in prior to their scheduled shift time, stay later, or at other times, work weekends or from home in some capacity.

97.     Defendant has strongly encouraged and pressured Inside Sales Representatives to work overtime hours from home or to come in early or stay late.

98.     In order to meet sales quotas and maximize their commission and bonus, Plaintiffs and other Inside Sales Representatives would routinely work as many overtime hours

as they wished with the full knowledge, approval and encouragement of sales Managers/Directors and officers of the Defendant.

99.     Inside Sales Representatives were warned when falling short of quotas that their jobs could be terminated and encouraged to work as many hours as necessary and possible to hit goals and quotas; thus overtime hours increased towards the end of the month by many BDR.

100.    Defendant treated Plaintiffs and the class of similarly situated employees, as exempt, and made clear to this class of employees that they deemed them to be exempt from overtime wages; hence the company policy and practice of not recording and clocking in the work hours of the class of Inside Sales Representatives.

101.    Plaintiffs, and the class of similarly situated, like other Inside Sales Representatives, questioned the Defendant about not being paid overtime wages for ALL the overtime hours worked, and Defendant's managers would warn Inside Sales Representatives that if they did not like the pay practices, they could leave and have a bad reference.  Other inquiries by employees questioning the failure to pay overtime wages were given intentionally false communications that the company would investigate and look into it, but never justifying the exemption, or simply state that they are paid "salaried" employees such that they do not have a right to overtime or premium pay.

102.    All Inside Sales Representatives followed corporate policies and procedures applicable to all their offices where Inside Sales Representatives worked.

103.    All Inside Sales Representatives were trained to perform their job duties and expected to perform their job duties in similar manners throughout their multiple offices.

104.    All Inside Sales Representatives attended sales meetings during which the Defendant went over new procedures, policies and sales protocols and was clear to Plaintiffs, applied to all Inside Sales Representatives employed by the Defendant.

105.    Defendant should be well aware that the FLSA requires the regular rate of pay calculation to include not only the base salary, but the bonuses and commissions in the calculation; thus the overtime rates of the Plaintiffs' class must be based upon not just the base salary, but the commissions and bonuses as well.   *See* CFR 551.511.    Therefore, if an employee's base wages are $35,000, and he or she earned $1,000 in the month while working overtime, the regular rate of pay is based upon $36,000 for the month.

**COUNT I**
**VIOLATIONS OF FLSA §207 AND DECLARATORY ACTION**
**PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202**

106.    Plaintiffs alleges and incorporates by reference paragraphs one (1) through one hundred five (105) of this Complaint and fully restates and realleges all facts and claims herein as if fully stated.

107.    Defendant has willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to pay all Inside Sales Representatives, under the various job titles identified in this complaint, required overtime wages for all hours worked.

108.    Plaintiffs, and all other BDR, closers and Inside Sales Representatives (IRS), routinely worked through some or all of the one (1) hour meal break provided, and as all such time should have been counted as compensable overtime hours during any workweek that Plaintiff and all others similarly situated, worked the rest of the forty (40) hour shift times.

109.    Defendant knew that Plaintiffs and ISRs routinely worked through some or all of this 1 hour provided lunch break, and knew that working while eating was not an uninterrupted excluded work time.

110.    Employees were not given any real opportunity to report and claim these meal break compensable hours, or the times spent on telephone calls and emails outside the office, and the company time reporting system did not provide for any contemporaneous time tracking in which breaks were logged in and out or the actual start times or ending times for the day were actually logged.

111.    Similarly, ISRs, including Plaintiffs were permitted to commence working prior to the shift times, but likewise, there was no means to clock in when they started working.

112.    Plaintiffs and other ISRs also routinely stayed after the ending shift time and were discouraged by management from claiming and reporting these overtime hours.

113.    The BDR and closer positions, as well as other ISR positions, because of the nature of the business being B2B, involved having to communicate with customers after business hours, and even on weekends by telephone and email.

114.    BDR were required to use personal cell phones, have their company email on their phones and expected to respond to customers when they contacted them outside of the office.

115.    Defendant also failed to provide any real means to report these additional times and work hours, and should have been counted as compensable time.

116.    Defendant had a duty and obligation under the FLSA, and as per CFR part 516, to contemporaneously track and record all work hours of hourly non-exempt employees, including BDRs and ISRs under any job titles.

117.    As Defendant failed to institute any actual time tracking system or time clock for employees to log in and out their ACTUAL work times, the system left Plaintiff, and all other employees, subject to working off the clock and routinely working overtime, compensable hours without being paid for all the hours worked.

118.    Defendant's conduct and actions of turning a blind eye, ignoring the fact that time sheets showing eight (8) hours every day, and forty (40) hours every week were clearly known to be inaccurate and an understatement of Plaintiffs' and all other ISRs actual working hours, resulted in a willful violation of the overtime wage law of Section 207 of the FLSA.

119.    Defendant's actions constitute permitting Plaintiffs and all other ISRs to suffer to work off the clock without being paid for all hours, as literally there was no actual time clock.

120.    Defendant maintained a code of silence as to discussing overtime hours, overtime pay and any problems of employees knowingly exceeding the forty (40) hour workweek by coming in early, working through meal breaks and staying late while their time sheets reflect only forty (40) hours for the week and 8 hours for the day.

121.    At any given time, managers and supervisors were aware of Plaintiffs and other BDR, Closers and ISR coming in and working early, working through meal breaks and staying late and that their time sheets were inaccurate and not capturing all their work hours.

122.    Indeed, all ISR, including Closers and BDR were intimidated against reporting the extra compensable overtime hours and told to focus on their performance goals and bonuses,

while simultaneously being pressured and warned to hit goals, metrics and quotas or be subject to disciplinary action, including termination of their employment.

123.   The Defendant intentionally created a work environment that was oppressive, laced with fear and intimidation against reporting overtime hours and complaining about not being paid for all overtime hours, as doing so would draw ire and scrutiny of management.

124.   Meanwhile, Plaintiffs and all other BDR, closers and ISR were warned to hit metrics and goals or they would find themselves on the way out the door.

125.   Some managers simply filled in forty (40) hours for each workweek of BDR, and closers, knowing this to be false, inaccurate and wrestling in the employees involved not being paid for all hours worked, because management maintained a policy of discouraging them from reporting all overtime hours worked.

126.   Plaintiff Garnick claimed some overtime hours with management pre-approval at some point in time, but was always cautious not to report all her overtime work hours, and never the hours worked through the meal breaks, so as to draw the ire and scrutiny of management.

127.   Employees worked in fear of reporting the overtime hours worked, out of fears and concerts that if they weren't meeting the quotas, metrics and goals, they would be subjected to review, scrutiny and potential termination.

128.   Thus, Plaintiffs and other ISRs worked off the clock without complaints, despite management knowing that the top producers and performers, and in order to be a top producer and performer, the job required working more than 40 hours routinely.

129.    Thus, Plaintiffs and other BDR, closers and ISR remained silent and worked overtime hours routinely without reporting these hours and without being paid for all the hours worried.

130.    Defendant has willfully and with reckless disregard for the requirements of the FLSA and its regulations, failed to pay Plaintiffs and the Putative Class, comprised of all current and former similarly situated sales employees a premium or overtime wages for all work hours over (40) hours in one or more work weeks as mandated by FLSA §207.

131.    Defendant does not have a good faith basis for these described unlawful pay practices, such that Garnick, Romeo and each and every member of the putative class is entitled to be paid an equal sum in overtime wages owed at rates of one and one half times their respective regular rates of pay as liquidated damages. *See* <u>Johnson v. Big Lots Stores, Inc.</u>, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

132.    Defendant knowingly and willfully failed to track the hours worked by Plaintiffs and the class of similarly situated employees, composed of the Plaintiffs Class.

133.    Defendants suggested, encouraged and requested that all ISRs work as many hours as they could to meet or exceed sales goals, and have direct knowledge of ISRs working overtime hours.

134.    By failing to record, report, and/or preserve records of all minutes and hours worked by Plaintiffs and the class of similarly situated ISRs, the Defendant has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 et. seq., including 29 USC Sec. 211(c) and 215 (a).

135.   Defendant knew or should have known that the act of paying permitting inside sales reps such as BDR and closers to work off the clock and without a clock, including working through meal breaks, coming in early, staying late was grossly insufficient and evades the wage and hour requirements of the FLSA such that a three (3) year statute of limitations applies.

136.   Defendant knew and knows now, that overtime wages are to be paid at one and one half times the employees' regular rates of pay to include all compensation/bonuses earned but, as a means to save hundreds of millions of dollars in labor costs, willfully created policies and procedures to limit and avoid paying employees the overtime wages due and owing.

137.   To summarize, Defendant has willfully and lacking in good faith, violated the FLSA by the following unlawful pay practices applicable to Plaintiffs, and the class of similarly situated persons:  a) Willfully instituting and maintaining a deficient, inaccurate time tracking system to the harm and detriment of and all other ISRs; b) maintaining a De Facto policy against reporting all overtime hours worked, including working through meal breaks; and c) permitting Garnick, Romeo and all other ISRs to suffer to work off the clock without being paid for all hours worked.

138.   As a result of the prior FLSA Section 216b collective action lawsuit by *Gillard, Stramiello and Pate v. Fleetmatics*, settled in November 2016, Defendant was keenly aware of its history of violating the FLSA and stealing wages from non-exempt employees, including Plaintiff and all other similarly situated ISRs, yet, continued to maintain unlawful procedures, policies, including a De Facto policy against reporting all overtime hours worked as to which deprive Plaintiff and all other ISRs their overtime wages earned.

139.    As a result of Defendant's willful violations of the FLSA, Plaintiffs and the Plaintiff Class, composed of all other present and former ISR similarly situated, have suffered economic damages by Defendant's failure to pay overtime compensation in accordance with FLSA §207.

140.    Due to Defendant's willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to 29 U.S.C. §255(a).

141.    As a result of Defendant's unlawful acts and pay practices described herein, Plaintiffs and the Putative Class of all other similarly situated ISRs, have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §216(b), as well as injunctive relief pursuant to 29 U.S.C. §217.

<u>**COUNT II**</u>
<u>**FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED**</u>

142.    Plaintiffs adopt and reallege paragraphs 1 through 105 as if fully set forth herein.

143.    Evidence reflecting the precise number of overtime hours worked by Plaintiffs and every member of the Class, as well as the applicable compensation rates, is in the possession of Defendants.

144.    However, and to the extent records are unavailable, Plaintiff, and members of the Class, may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. <u>Anderson v. Mt. Clemens Pottery Co.,</u> 328 U.S. 680 (1946).

145.    All employers subject to the FLSA must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

146.    With respect to an employee subject to the FLSA provisions, the following records must be kept:

    a.    Personal information, including employee's name, home address, occupation, sex, and birth date if under nineteen (19) years of age;

    b.    Hour and day when work week begins;

    c.    Regular hourly pay rate for any week when overtime is worked;

    d.    Total hours worked each workday and each workweek;

    e.    Total daily or weekly straight-time earnings;

    f.    Total overtime pay for the workweek;

    g.    Deductions from or additions to wages;

    h.    Total wages paid each pay period; and

    i.    Date of payment and pay period covered

147.    Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist.  *See,* 29 U.S.C. § 215(a)(5); *Also See,* Dunlop v. Gray-Goto, Inc., 528 F.2d 792 (10th Cir. 1976).

148.    Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the Act.  An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked.  *See,* Wirtz v. First State Abstract Ins. Co.,

362 F.2d 83 (8th Cir. 1966); Boekemeier v. Fourth Universalist Soc'y, 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

149.    An employer's failure to maintain records may create a presumption in the aggrieved employee's favor.  *See,* Myers v. The Copper Cellar Corp., 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing* Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946).

150.    Defendant has failed to accurately and contemporaneously record, track and report the Plaintiffs' and Class of similarly situated members, time and work hours as required under the FLSA and the related DOL regulations.

151.    Defendant has failed to make, keep and preserve records, with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR 516.2 and 29 U.S.C. §§ 211, 216 and related laws.

152.    Defendants never designated any set representative period for examining the application of exemptions, nor did they have any agreement with the ISR as to the application of any exemption or designate any pay or wages on records as subject to any exemption.

**WHEREFORE,** Plaintiffs LAUREN GARNICK, TSHACHA ROMEO and COREY HANVEY, individually, and on behalf of all other similarly situated, past and present Inside Sales Representatives, seek the following the following relief:

a.    Designation of this action as a collective action.

b.    That Plaintiffs LAUREN GARNICK, TSHACHA ROMEO and COREY HANVEY be allowed to give notice of this collective action, or that this Court issue such notice at the earliest possible time; to all past and present Inside Sales Representatives employed by VERIZON CONNECT FLEET USA LLC., at any

time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice for each respective class;

c.  Designate Plaintiffs, LAUREN GARNICK, TSHACHA ROMEO and COREY HANVEY as Representatives of the Collective Class for purposes of engaging in mediation, with the authority to execute any Collective Class settlement agreement the parties might reach, which is subject to Court's approval before making any such agreement binding.

d.  That all past and present Inside Sales Representatives be informed of the nature of this collective action, and similarly situated employee's right to join this lawsuit if they believe that they were or are misclassified as an exempt employee;

e.  That the Court find and declare Defendant in violation of the overtime compensation provisions of the FLSA;

f.  That the Court find and declare Defendant's violations of the FLSA were and are willful;

g.  That the Court enjoin Defendant, under to 29 U.S.C. § 217, from withholding future payment of overtime compensation owed to members of the Plaintiffs Class.

h.  That the Court award to Plaintiffs, LAUREN GARNICK, TSHACHA ROMEO, COREY HANVEY and the Plaintiff Class, comprised of all similarly situated employees, overtime compensation at a rate of one and one half time their regular rates of pay, including the value of all compensation earned, for previous hours

worked in excess of forty (40) for any given week during the past three years AND liquidated damages of an equal amount of the overtime compensation, in addition to penalties and interest on said award pursuant to FLSA §216 and all other related economic losses;

i.   That the Court award Plaintiffs, LAUREN GARNICK, TSHACHA ROMEO, COREY HANVEY and the Plaintiffs who opt into this action, recovery of their reasonable attorneys' fees and costs and  expenses of litigation pursuant to FLSA § 216, including expert fees;

j.   That the Court award Plaintiffs, LAUREN GARNICK,TSHACHA ROMEO and COREY HANVEY a Class Representative service fee award for the justice they sought out for so many and their services in this case as representatives for the putative class.

k.   That the Court issue in order of judgment under 29 U.S.C 216-17, 28 U.S.C. 2201 and 2202 finding that the Defendant unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees, as well as issue an INJUNCTION barring the Defendant from further violating the FLSA;

l.   Award Prejudgment and post-judgment interest, as provided by law: and;

m.   That the Court award any other legal and equitable relief as this Court may deem appropriate, including the value of underpaid matching funds in company pension or 401k plans.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted this 13th day of July 2020.

*/s/Mitchell L. Feldman*
**Mitchell L. Feldman, Esq**
Florida Bar No. 0080349
FELDMAN LEGAL GROUP
6940 West Linebaugh Avenue, Suite 101
Tampa, Florida 33625
Tele: (813) 639-9366 -Fax: (813) 639-9376
E-mail: mlf@feldmanlegal.us
Secondary: jquintus@feldmanlegal.us
*Attorneys for Plaintiffs and the class of*
*similarly situated*