# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LAUREN GARNICK, TSHACHA ROMEO
and COREY HANVEY, Individually, and on
behalf of all others similarly situated,

     Plaintiffs,

                                       Case No: 8:20-cv-01474

   v.

VERIZON CONNECT FLEET USA LLC,
     Defendant.

_____/

## JOINT MOTION FOR APPROVAL
## OF FLSA COLLECTIVE ACTION SETTLEMENT

The Named Plaintiffs, LAUREN GARNICK, TSHACHA ROMEO, and COREY HANVEY ("Named Plaintiffs") and Defendant, VERIZON CONNECT FLEET USA LLC ("Verizon Connect" or "Defendant") (collectively, the "Parties"), by the through their respective undersigned counsel, jointly move the Court to approve the settlement reached in this lawsuit alleging off-the-clock work violations under the Fair Labor Standards Act ("FLSA"). The Parties respectfully submit that the proposed Settlement Agreement is fair and reasonable and satisfies the criteria for approval under FLSA § 216(b). The Parties reached a resolution of this lawsuit and the Plaintiffs claims several weeks following their participation in a full-day mediation before a Court-approved mediator, Kay Wolf. By this Joint Motion, the Parties respectfully submit that the Court should (i) approve the Settlement Agreement attached as Exhibit A (the Agreement), and its terms,

including the attorney's fees for Plaintiffs' counsel, and (ii) enter the [Proposed] Order Approving Settlement and Dismissal With Prejudice.

## I.   MEMORANDUM OF LAW, CASE SUMMARY AND BACKGROUND

On June 29, 2020, Plaintiffs Garnick and Romeo filed a FLSA § 216(b) Collective Action Complaint against Verizon Connect. (DE 1). Plaintiffs Garnick and Romeo were later joined by Plaintiff Hanvey, who then filed an Amended Complaint on July 13, 2020 (DE 13).

The now operative Amended Complaint contains a single count (Count I) against Defendant for violation of the overtime wage requirements of Section 207a of the FLSA, brought by Garnick, Romeo and Hanvey individually, and on behalf of all those similarly situated, who worked under the titles of Business Development Representatives (BDR) and Sales Partners (aka closers) and who worked from Defendant's office locations across the country (Tampa, Florida, Scottsdale, Arizona, San Diego, California, Rolling Meadows, Illinois, and Charlotte, North Carolina).  The claims in the Amended Complaint stem from the same operative facts and allegations that Defendant willfully violated the FLSA by failing to pay the Named Plaintiffs and all other similarly situated employees for all overtime hours worked.   Plaintiffs here primarily contend they were assigned 9 hour work days and 45 hour weekly work schedules but were subject to a de facto policy against reporting more than 8 hours per day and no more than 40 hours per week, with each day thus automatically deducting 1 hour for assumed meal breaks

which they claim to have routinely worked through during the terms of their employment.

Plaintiffs allege that all persons employed with Verizon Connect as inside sales representatives (ISR) under the titles of BDR or Sales Partners (or Closers) were primarily performing the same work requirements and job duties. The Plaintiffs who were BDRs were primarily engaged in B2B solicitations of businesses to sell the Verizon Connect telematics and GPS tracking equipment and services and to set up demonstration sales appointments for the Closers, whereas the Closers were the sales employees who were charged with the responsibility of closing the deals and getting the customers to sign sales contracts or orders. All BDRs and Closers were paid a base hourly pay and were eligible to receive commissions.

The Named Plaintiffs early on in this case filed their Motion for Conditional Certification to proceed collectively and sought court supervised notice to all the putative class or collective members, DE 68, September 9, 2020. The Named Plaintiffs were joined by approximately 35 others who consented to join this action as party plaintiffs. Thereafter, another 14 plaintiffs opted into this action prior to the Court granting Plaintiffs' Motion for Conditional Certification by ORDER (DE 110) August 30, 2021. Thereafter, another 133 individuals filed opt-in consent forms in this action, bringing the total number of plaintiffs to 185.

The Parties submitted their CMR on October 13, 2020, immediately after which Plaintiffs commenced in serving written discovery on Verizon Connect and

seeking a deposition of Verizon Connect's corporate representative.  Following the service of Plaintiffs' discovery, and numerous conferrals, the Parties entered into a Discovery Stipulation that resolved the discovery disputes without having to raise the disputes to the court in numerous motions to compel and protective order related matters.  Pursuant to the Discovery Stipulation, the Parties agreed upon the delivery of ESI related to the work activities of the Named Plaintiffs, and further agreed that upon an Order of Conditional Certification, Defendant would produce similar ESI for an agreed-upon number of opt-in plaintiffs.  The ESI included payroll and time records and other timestamp data.  Further, the parties agreed to mediate this dispute in attempts to exhaust settlement discussions for all Plaintiffs within 60 days of the close of the Notice period.  The Notice period concluded on or about November 23, 2021, and the parties scheduled a mediation with Court-approved mediator, Kay Wolf, for January 14, 2022.

Pursuant to the Discovery Stipulation, Defendant produced records related to the agreed-upon Plaintiffs including phone records, badge swipe records, CRM timestamp data, and emails, along with producing time records and payroll records for all Plaintiffs. In preparation for mediation discussions, counsel for Verizon Connect and Plaintiffs assembled and analyzed the multiple sources of data relevant to Plaintiffs' claims and alleged damages.  Plaintiffs also presented Defendant with 35 declarations submitted with the Named Plaintiffs' the Motion for Conditional Certification, which contained statements of the estimated overtime hours they claimed to have worked without compensation, including

routinely working through meal breaks, as well as other times before and after the scheduled shift times. Plaintiffs then analyzed all the data and records and presented Defendants with a working Excel spreadsheet damages model.

The Parties participated a full-day mediation on January 14, 2022. During the mediation, the Parties strongly contested each side's positions, interpretation of the facts and legal arguments including:   a) whether Plaintiffs were similarly situated, b) the law related to off the clock work claims, c) and the work activities and records concerning the hours Plaintiffs alleged they worked and the extent to which meal breaks were taken. The January 14th mediation ended without the Parties reaching a resolution, and the mediator filed a report indicating that the Parties had reached an impasse in negotiations. (DE 139).

Thereafter, counsel for Plaintiffs and Verizon Connect continued to engage in numerous discussions and negotiations in an effort to reach a compromise of Plaintiffs' wage claims to avoid the continued expense and burden of litigation. On February 4, 2022, the Parties reached an agreement in principle to settle this lawsuit and reduced the material terms into a jointly executed term sheet. The Parties  agreed to work diligently to prepare and submit settlement papers to this Court for approval as per the requirements of Lynn's Food Stores Inc. v. U.S. Dep't of Labor, 679 F.2d 1350 (11th Cir. 1982).

As addressed *supra*, the Parties engaged in substantial research, investigation and the exchange of hundreds thousands of pages of records and ESI files prior to negotiating the Settlement. The Parties exchanged significant

information regarding Plaintiffs' off-the-clock work claims and Verizon Connect's defenses to such claims.  This included a complete analysis and calculations of Plaintiffs' alleged off-the-clock damages.  Counsel for the Parties' also engaged in detailed discussions and analysis of sophisticated damages models prepared by the Plaintiffs regarding Plaintiffs' claimed unpaid overtime wages.  Using all this information, the parties spent weeks negotiating and discussing and debating Defendant's defenses, and Plaintiffs' off-the-clock damages calculations until this compromise was reached after 20 months of hard fought litigation.

## A.   OVERVIEW OF THE SETTLEMENT TERMS

The terms of this settlement are set forth in the Settlement Agreement, attached hereto as **EXHIBIT A** (the "Settlement Agreement").  If approved, the settlement will provide all Plaintiffs in this action a fair and reasonable sum in overtime wages tied to the number of valid workweeks within the 3 years preceding the filing of this Complaint to the present each Plaintiff worked and based upon each Plaintiff's respective overtime rate.  The Parties have agreed to resolve this the Lawsuit for a Gross Settlement Fund in the amount of Three Million Two Hundred Thousand dollars ($3,200,000.00), which is inclusive of (a) all of the Individual Settlement Payments to Plaintiffs; (b) attorneys' fees and costs of Plaintiffs' Counsel as approved by the Court; and (c) the fees and costs associated with settlement administration.

One Million Sixty-Six Thousand Five Hundred Sixty Dollars ($1,066,560.00) is to be paid to Plaintiffs' Counsel for attorneys' fees in addition

to reimbursing litigations costs and expenses in the sum of $21,395.28 for expenses incurred in the Lawsuit if approved herein by this Court. The sum of Ten Thousand ($10,0000) will be set aside for the fees and expenses of the agreed upon claims administrator, Rust Consulting, for administration of the settlement proceeds, including all necessary tax forms. In addition, The Net Settlement Amount after deduction of attorney's fees and costs, along with the capped amount of costs for claims administration, will be divided into Individual Settlement Payments calculated proportionately based upon each of the Plaintiff's (i) net workweeks in the applicable statute of limitations; (ii) the alleged off-the-clock hours; (iii) each Plaintiff's average overtime rate in the covered period.

In exchange, and as further outlined in the Settlement Agreement, the Lawsuit should be dismissed with prejudice by this Court after approval. Pursuant to the Settlement Agreement, Plaintiffs will release Defendant from all off-the-clock work claims, rights, demands, liabilities and causes of action, through the date of the date the Settlement is approved and the dismissal Order entered, including without limitation all known or unknown claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees and expenses.[1]

---

[1] Plaintiff who worked in Defendant's California office will not release their state law claims under the terms of the Settlement Agreement.

**B.** **STANDARD OF REVIEW AND BRIEF IN SUPPORT OF MOTION**

    **1.** **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

The District Court is charged with approving any settlement agreement in a FLSA Settlement as per <u>Lynn's Food Stores, Inc. v. United States</u>, 679 F.2d 1350 (11th Cir. 1982. § 216(b) of the FLSA allows employees to settle and release their claims under the FLSA when a court reviews and approves a settlement in a private action for back wages. See 29 U.S.C. § 216(b).   FLSA section 216(b) collective actions utilize an opt in process, unlike the Rule 23 opt out process, and only those persons who wish to participate and affirmatively file a document to participate in this settlement are affected by this settlement.   Here, each Plaintiff signed a consent to join form that specifically and clearly authorized the Named Plaintiffs to reach this settlement on their behalf and specifically agreed to be bound by the terms of this Settlement Agreement, as well as forfeiting their own right to seek to file a claim or lawsuit against Verizon Connect.    Thus, an approval of this agreement by the Court and issuance of an Order and final judgment for the Plaintiffs as per <u>Lynn's Foods Stores Inc.</u> shall be binding upon all Plaintiffs in this case without further notification.

    "The federal courts have long recognized a strong policy and presumption in favor of class settlements." <u>George</u>, 369 F. Supp. 3d at 1367. "Compromises of disputed claims are favored by the courts." <u>Williams v. First Nat'l Bank</u>, 216 U.S. 582, 595 (1910). Indeed, there is a "policy of encouraging settlement

of litigation." <u>Lynn's Food Stores, Inc. v. U.S.</u>, 679 F.2d 1350, 1354 (11th Cir. 1982).  In detailing the circumstances justifying court approval of an FLSA settlement in the litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

<u>Lynn's Food Stores</u>, 679 F.2d at 1354.

As outlined herein, the settlement of the instant action confers substantial benefits upon Plaintiffs of disputed issues.  The common fund reflects a payment to each Plaintiff in this action in the equivalent sum of 4 hours of recovered overtime wages plus an equal sum in liquidated damages for 85% of each of their total eligible or net workweeks in which they worked 5 days and were present such that each plaintiff could have conceivably worked overtime hours in such weeks, as opposed to weeks in which they missed a day and used PTO or were simply out with unpaid days or on vacation.   Moreover, this settlement provides for wages for the extended 3 year statute of limitations, whereas going to trial these Plaintiffs faced the risk of losing 1/3 if the jury did not find Defendant acted willfully and

thus limited the SOL to 2 years.  Further demonstrating to the court that the settlement amount and the allocation by the formula is fair and reasonable, the Named Plaintiffs' estimated net recoveries range from approximately $10,000 to $18,000 and are far from the highest net wage recovery for plaintiffs in this case, which is in excess of $50,000.

In determining whether to approve the Settlement, the Court analyzes whether it is fair, adequate and reasonable. George, 369 F.Supp.3d at 1369; See also Leverso v. SouthTrust Bank, 18 F.3d 1527, 1530 (11th Cir. 1994). "A settlement is fair, reasonable, and adequate when the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued. Importantly, the Court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." Id. (internal citations omitted).

The 11th Circuit has identified the following factors as relevant to review of whether a class settlement's terms are fair, reasonable and adequate: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  Bennett, Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984), Leverso, 18 F.3d at 1530 n.6.  The

proposed Settlement Agreement is fair, adequate and reasonable, and treats Settlement Class Members equitably relative to each other, given the costs, risks and probability of the success if the current complex litigation were to continue.

a.   <u>Likelihood of Success at Trial.</u>

"Plaintiffs' likelihood of success at trial is not only the first <u>Bennett</u> factor, it is also by far the most important factor in evaluating a class action settlement." <u>Figueroa v. Sharper Image Corp.</u>, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007) (quotation and citation omitted); *accord* <u>Knight v. Alabama</u>, 469 F. Supp. 2d 1016, 1032-33 (N.D. Ala. 2006*)*("The likelihood of success at trial is by far the most important factor when evaluating a settlement."). "The likelihood of success at trial is weighed against the amount and form of relief contained in the settlement." <u>Lipuma v. Am. Express Co.</u>, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). "The Court, however, has neither the duty nor the right to reach any ultimate conclusions on the issues of fact or law which underlie the merits of the dispute… In fact, absent fraud, collusion or the like, the Court should be hesitant to substitute its own judgment for that of experienced counsel representing the class." <u>In re Domestic Air Transp. Antitrust Litig.</u>, 148 F.R.D. 297, 315 (N.D. Ga. 1993).

With respect to this first factor, Plaintiffs' likelihood of success at trial was not clear.  The disputed questions of law and fact in this case were complex, and Plaintiffs could not be certain to have prevailed on the issue of liability or at the final collective action certification stage.  Among other things, Verizon Connect denies that it engaged in any unlawful or improper conduct, including, expressly

Page 11

all off-the-clock work claims of Plaintiffs, and denies all liability and damages of any kind owed to any of the Plaintiffs in this action.  In addition, a significant bona fide dispute exists as to whether collective treatment of Plaintiffs' FLSA claims is appropriate.  The Named Plaintiffs filed a Motion for Conditional Certification, which was opposed by Verizon Connect.  Verizon Connect continues to deny that the Lawsuit should be litigated on a collective action basis.  Absent settlement, Verizon Connect would seek to file a motion for decertification of the conditionally certified class.  If granted, the approximately 185 Plaintiffs would have to commence their own formal legal action and incur filing fees just to present their own claims.  All such individual actions carry risks of paying costs and incurring loss of time from work and other consequences that may dissuade the filing of individual civil actions.  Moreover, as discussed in more depth below, in the context of the range of possible recovery, the disputed questions of law and fact also included Defendant's factual and legal basis for contending that, even if this matter could proceed on a collective basis and Plaintiffs succeeded at the liability stage, Plaintiffs would only be entitled to a limited damages award.

In light of these disputed questions of fact and law, it is clear that both Parties faced significant risks if this case were to proceed forward into full-blown, costly, protracted discovery on the merits related to all Plaintiffs and the anticipated competing discovery motions related to ESI, time stamped data, and information associated with the work activities of all 185 Plaintiffs.  Further, even assuming Defendant's anticipated motion for summary judgment and motion for

decertification were denied, a significant period of time would pass – an estimated one or more years – before the case could be prepped for a trial.  Then, a significant number of Plaintiffs would be expected to testify over likely many weeks of a jury trial, and deliberations would then follow.  Similarly, Defendant would carry the risks of additional litigation costs and, if the case were to proceed to trial, the risk of a jury awarding even a greater sum in wages.  These uncertainties and inherent risks of less (or even a zero) recovery at trial weigh in favor of approving the settlement and declaring it fair and reasonable.

> b.   <u>Range of Possible Recovery and Point in Range of Possible Recovery Where Settlement is Fair, Adequate, and Reasonable.</u>

The next two *Bennett* factors—the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable—are typically considered together. *See, e.g.,* <u>Lipuma</u>, 406 F. Supp. 2d at 1322; <u>Behrens v. Wometco Enters., Inc.,</u> 118 F.R.D. 534, 541 (S.D. Fla. 1988). "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." <u>Lipuma</u>, 406 F. Supp. 2d at 1323. "[T]the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." <u>Behrens</u>, 118 F.R.D. at 542.

The settlement terms regarding each Plaintiff's recovery were based on careful analysis and complex damaging modeling by both Plaintiffs and Defendant of the overtime compensation allegedly due to Plaintiffs and these settlement terms represent an accurate accounting of the Plaintiffs' range of recovery after

many months of negotiations, 1 year and 7 months of protracted litigation, and complex analysis of records and sophisticated damages calculations and models based upon numerous scenarios.

First, following the close of the Notice period in November 2021, up through the mediation in January 2022, the Parties undertook a comprehensive assessment of the Plaintiffs work activities related to Plaintiffs' claims of working through he presumed 1 hour meal break and other pre-shift and post shift work times to assess the existence of and number of overtime hours worked for a sampling of the Plaintiffs. The review and analysis included ESI data (such time stamp CRM data, phone call logs, badge swipe records, emails and other ESI) as to the possible work hours from a representative group of Plaintiffs, including the named Plaintiffs. The Parties also reviewed the unpaid overtime hours claimed by Plaintiffs in their Declarations, and the actual overtime hours recorded and paid to Plaintiffs. Class counsel performed numerous complex damages modeling based upon best and worst case scenarios based upon their own estimations on average across their entire employment as per Anderson vs. Mt. Clemens Pottery Co., 328 U.S. 680 (66 S.Ct. 1187, 90 L.Ed. 1515). Conversely, Verizon Connect conducted internal investigations and interviews and highly disputed the amount of the claimed unpaid overtime hours Plaintiffs estimated they worked. The Parties also recognize that the jury at trial could rule that the Defendant's actions were not willful and limit the applicable FLSA statute of limitations would only be two (2) years, and also that the court, charged with the decision on whether the Defendant

acted in good faith, could have within its discretion either approved or rejected an award of liquidated damages.

Using the data and information available, and the above risks and legal disputes, the Parties negotiated at arm's length, taking into consideration all the information and excluding the workweeks in which Plaintiffs did not work a full 40 hours, or missed 1 or more work days and used PTO, vacation or holiday time.

Although certain Plaintiffs contacted by Class counsel reported working significant unpaid overtime hours, some in excess of 10 hour per week during their terms of employment, Verizon Connect contended that their analysis of the available electronically stored information, and the records demonstrating the amount of overtime paid to Plaintiffs, strongly disputed such Plaintiffs' claims.

In addition, Verizon Connect had presented viable legal and factual arguments for limiting recovery by the Plaintiffs.  First, Verizon contended that a certain amount of the overtime hours claimed to be worked by the Plaintiffs constituted de minimis, non-compensable activity. *See* Lindow v. United States, 738 F.2d 1057, 1062 (9th Cir. 1984).  This defense could have precluded counting work lasting less than ten minutes or occurring while the class member was primarily engaged in personal pursuits towards the 40-hour-per-week threshold for overtime pay.  Second, Verizon Connect maintained that it lacked actual or constructive knowledge of Plaintiffs' alleged off the clock work such that the Company was not liable for the claimed overtime hours worked.  Defendant takes fault with the Plaintiffs because, throughout their term of employment, Plaintiffs

self-reported their hours, and likewise disputes Plaintiffs' contention that the Company had and maintained a de facto policy which encouraged and ratified sales representatives to work off the clock as many hours as necessary to hit sales goals, quotes and metrics.

Plaintiffs strongly disagree with Verizon Connect's factual and legal arguments.   Nonetheless, Plaintiffs recognize that these defenses present substantial litigation risks including a risk of zero recovery after costly and protracted litigation upwards of 2 years or more, and potential appeals.  Indeed, given Verizon Connect's asserted defenses, and the inherent risks of a jury trial, a total recovery below the wages the Plaintiffs are to receive as their net settlement amount after deduction of attorney's fees and costs and the costs of settlement claims administration was possible.  Further, Plaintiffs also would carry the risks of the Court ruling favorably upon the Defendant's motion to decertify the conditionally certified class, and motion for summary judgment, as well as the risks of carrying their burden to prove damages and liability at trial.

Because of the wide range of possible recovery based on a thorough review of the relevant data and on the legal grounds Verizon Connect advanced for limiting damages even further, Plaintiffs' counsel was of the opinion, based upon their extensive history of litigating large scale class and collective action cases such as this, that a recovery below the settlement amount ultimately agreed upon was a possible outcome here.  Accordingly, the settlement achieved is within the range of fair and reasonable outcomes given the overall range of possible recoveries.

The common fund reflects a pro rata payment to each Plaintiff based upon each Plaintiff's own overtime rate calculated at 1.5 times their regular rate of pay, equivalent to the sum of 4 hours of overtime wages plus an equal sum in liquidated damages for 85% of each of their total eligible or net workweeks in which they worked 5 days and were present, such that each Plaintiff could have conceivably worked overtime hours in such weeks, as opposed to weeks in which they missed a day and used PTO or were simply out with unpaid days or on vacation.  Thus, the allocation is fair and reasonable for all the Plaintiffs because it provides them overtime hours based upon an assumption they worked in fact 4 hours of overtime hours in each and every week they worked a full 8 hour, 5-day week, even if they did not work any overtime hours for the week or less than the 4 hours paid to them pursuant to this settlement.

Many Plaintiffs who opted into this action have never declared the amount of their claimed overtime hours but are nonetheless given the presumption that they did work overtime in each and every eligible work workweek.  As such, upwards of 150 Plaintiffs are receiving the benefit of the average hours claimed by the preceding 35 or so Plaintiffs who had opted into this action prior to notice and signed declarations declaring their estimated unpaid overtime hours on a weekly basis.  Further, while the Plaintiffs' claims for unpaid overtime hours are solely based upon estimations of hours routinely worked during the terms of their employment, Plaintiffs had not categorically stated that they worked this estimated overtime in each and every week.  But, here, Plaintiffs are receiving 4 hours per

eligible work week and an equal sum in liquidation for all eligible workweeks, and are thus presumed to have worked this overtime in each and every such week.

Additionally, the settlement permits and encompasses claims for all Plaintiffs in the extended three-year statute of limitations period which would only apply only if Plaintiffs could prove willful violations of the law. Thus, many class members who would potentially receive no recovery or substantially reduced recoveries if their claims fell solely within the third year of the FLSA herein receive a pro rata share for all their workweeks without reduction. More importantly, the three named Plaintiffs, being charged with making a decision that affects all 185 Plaintiffs, deem this settlement fair and reasonable, and as noted *supra*, many of the Plaintiff's individual wage recoveries are higher than their own share of the settlement.

The above factors therefore weigh heavily in favor of the Court approving the settlement as fair and reasonable pursuant to *Lynn's Foods*.

c.    <u>The Complexity, Expense and Duration of Litigation.</u>

With respect to the complexity, expense, and duration of litigation, "[t]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." <u>Lipuma</u>, supra, 406 F. Supp. 2d at 1323. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." <u>Behrens</u>, 118 F.R.D. at 543.

This FLSA 216(b) collective action case, is both factually and legally complex and would be more expensive than most wage and hour class and collective actions to litigate through trial, as it is based upon contested factual allegations and not legal exemptions to overtime compensation requirements.  Proceeding with full-blown discovery related to all 185 Plaintiffs and pouring over an estimated thousands of files and gigabytes of data, electronically stored data and records such as emails, phone records, CRM records, badge swipe records, and other database and program timestamp data would, in Plaintiffs' estimation, require many thousands of hours of legal time.  Further the gathering and production of such records could take hundreds of hours for Defendant to produce.  This case, like most large collective actions, inevitably would require court intervention and the Parties' engagement in the submission of numerous discovery motions.  The Parties would also have to take and defend a significant number of depositions, including a certain percentage of Plaintiffs, as well as depositions of many managers and supervisors of the Plaintiffs', a corporate representative deposition and most likely an IT director's deposition.

Further down the line, following extensive discovery, the Parties would be engaging in motion practice, including, anticipated motions for summary judgment and decertification.  If a trial were to follow, it would be complex, and highly expensive in legal fees and costs.  Accordingly, this factor weighs in favor of preliminarily approving the settlement.

d.   The Stage of Proceedings at Which Settlement Was
     Achieved.

The sixth factor, the stage of the proceedings at which settlement was

achieved, also weighs in heavy favor of approval.  To evaluate this factor, the court

looks to whether Plaintiffs had access to sufficient information to adequately

evaluate the merits of the case and weigh the benefits of settlement against further

litigation. Lipuma, 406 F. Supp. 2d at 1324; Behrens, 118 F.R.D. at 544.  Early

settlement is favored, and full-blown discovery is not necessary. See, e.g., Lipuma,

406 F. Supp. 2d at 1324.  Here, the proposed settlement was achieved after 1 year,

7 months, and 7 days.  Plaintiffs Garnick, Romeo and Hanvey had support from

declarations from upwards of 35 other Plaintiffs to assess and use to weigh the

merits of the case, the damages at issues, and conduct informed negotiations with

the aid of their experienced class counsel.  Moreover, Defendant produced a

significant number of records related to the agreed-upon Plaintiffs, including

emails, phone records, CRM records, badge records, time records and payroll

records, all of which took Plaintiffs' counsel over 100 hours of legal time to analyze

and review even on a preliminary basis for mediation and settlement discussions.

For the foregoing reasons, the settlement is fair, reasonable, and adequate, and

should be approved by this Court.

## II.   **SETTLEMENT ADMINISTRATION FEE**

The Parties have agreed upon RUST CONSULTING to act as Third Party

Settlement Claims Administrator in the present case who is to be paid an a

maximum of $10,000 in settlement administration costs and fees.   The

administrative costs associated with the Settlement will be paid from the Common Fund settlement payment tendered to Rust by Verizon Connect.   The Administrator will be responsible for disseminating the Notices to the Plaintiffs; distribution of Plaintiff's attorneys' fees and costs; distribution of settlement payments to Plaintiffs; calculating the employee share of payroll tax withholdings and payment of such withholdings to the appropriate taxing authorities; calculating the employer's share of payroll tax liability; and all tax reporting related to the settlement payments to each individual Plaintiff.

III.   **ATTORNEYS' FEES AND COSTS**

The Settlement Agreement provides for Plaintiffs' counsel (class counsel) to receive a reasonable amount of attorneys' fees as a percentage of the gross settlement common fund (common fund fee).  Defendant agreed in negotiating a settlement, and as set forth in the Settlement Agreement, not to oppose a fee of thirty three percent (33.33%) of the gross settlement amount.  Most recently this Court in a similar FLSA collective action case in <u>Dozier</u> approved of the Plaintiffs' attorneys receiving ⅓ or 33.333% of the common fund as their fees and declared the same as reasonable on the face and consistent with awards in similar cases in this District.  "Even if the parties did not negotiate the attorneys' fees separately and without regard to the amount paid to Plaintiffs, an award of attorneys' fees representing 33% of the common fund is reasonable. See, e.g., <u>Freeman v. Trainingwheel Corp., LLC</u>, Case No. 2:19-cv-52-FtM-NPM, 2020 WL 7401488, at *3 (M.D. Fla. June 26, 2020) (approving settlement agreement in an FLSA

collective action and finding an attorneys' fees award constituting 30% of a common fund reasonable where "the attorneys' fees were not agreed upon separately and without regard to the amount paid to [p]plaintiffs"); Mosley, 2021 WL 293243 at *4 (approving attorneys' fees representing approximately one-third of the gross settlement amount); Freeman, 2020 WL 7401488, at *3 (M.D. Fla. June 26, 2020) (approving settlement award of attorneys' fees in FLSA collective action representing 30% of a common fund).  In approving the award of attorney's fees equivalent to 33.33% of the common fund, the Court declared:  "The Court need not conduct an in-depth analysis of the attorneys' fees award where, as here, "the total fee award sought is not patently unreasonable and the Defendant does not contest the reasonableness of the award." Freeman, 2020 WL 7401488, at *3. Additionally, the undersigned also recommends that the requested award for reimbursement of costs in the amount of $22,826 is also fair and reasonable." Dozier v. Dbi Servs., No. 3:18-cv-972-BJD-MCR, 2021 U.S. Dist. LEXIS 245359, at *28-30 (M.D. Fla. Dec. 22, 2021).";( Court order approving Report and Recommendation at:  Dozier v. Dbi Servs., No. 3:18-cv-972-BJD-MCR, 2022 U.S. Dist. LEXIS 10912 (M.D. Fla. Jan. 19, 2022).

Plaintiffs' counsel thus seeks to be awarded 33.33% of the $3,2000,000.00 gross settlement fund, (the sum of $1,066,656.00) to compensate them for risks, their incurred attorneys' fees and time incurred in this action, and reimbursement of the litigation costs and expenses they have incurred representing the Plaintiffs, the Opt-In Plaintiffs, and fighting and litigating for the rights of 185 Plaintiffs in

this FLSA 216(b) collective action for 1 year, 7 months, 7 days, in additional to all the time spent preceding the filing of the complaint performing necessary investigation and work preliminary legal work to prepare this national, large scale FLSA collective action.

The Supreme Court and Eleventh Circuit held that "attorneys who create a common fund are entitled to be compensated for their efforts from a reasonable percentage of that fund." Stahl v. Mastec, Inc., 2008 WL 2267469, *1 (M.D. Fla. 2008); citing Camden I Condominium Assoc., Inc. v. Dunkle, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); See also Boeing Co. v. Van Gemert, 444 U.S. 472 (1980); In re Checking Account Overdraft Litig., 830 F.Supp.2d 1330, 1362 (S.D.Fla. 2011) ("[T]he Eleventh Circuit made clear in Camden I that percentage of the fund is the exclusive method for awarding fees in common fund class actions"). Further this Court reiterated that the percentage of the Fund is the **preferred method** for compensating Plaintiff attorneys in class and collective actions involving recovery of a settlement fund. Signorelli v. UtiliQuest, LLC, No. 5:08-cv-38-OC-10GRJ, 2008 WL 7825757, (M.D. Fla. July 25, 2008).

In an FLSA collective action, "[a]lthough the Court must consider the reasonableness of any award of attorney's fees, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face." Vogenberger v. ATC Fitness Cape Coral, LLC, 2015 WL 1883537, at *5 (M.D. Fla. Apr. 24, 2015);

Hosier v. Mattress Firm, Inc., 2012 WL 2813960 (M.D. Fla. June 8, 2012). In addition, the FLSA provides for a mandatory award of "Costs of the action to a prevailing plaintiff." See 29 U.S.C. § 216(b); Glenn v. Gen Motors Corp., 841 F.2d 1567 (11th Cir. 1988).  As reflected in the settlement agreement, Plaintiff's counsel seeks an approval of the reimbursement of $21,395.28 for some (but not all) of the costs and expenses incurred so far in the nearly 2 years of collective action litigation, including:   the filing fee, process server charges, mediation charges and the Claims Administrator charges for the Notice to the Putative Class.  A copy of the costs supporting documents are attached as composite Exhibit B.  Defendant does not oppose this request and agrees that costs and expenses incurred should be reimbursed from the settlement fund as per the FLSA.

"Courts within this Circuit have awarded attorney's fees of approximately one-third of a common fund in FLSA and wage and hour cases." George, 369 F. Supp. 3d at 1382 (Approving Common Fund that provides Class Counsel's fee paid at 33% of the $925,000 Settlement Fund, and an additional amount for costs and settlement administration costs); See also most recently in this District Court, Dozier v. Dbi Servs., 2022 U.S. Dist. LEXIS 10912 (order approving Report and Recommendation of Magistrate approving of FLSA common fund settlement and payment of 33.33% (⅓) of the common fund as reasonable attorney's fees for Plaintiff's counsel, at: Dozier v. Dbi Servs., No. 3:18-cv-972-BJD-MCR, 2021 U.S. Dist. LEXIS 245359 (M.D. Fla. Dec. 22, 2021); Reyes v. AT & T Mobility Servs., Ltd. Liab. Co., No. 10-20837-Civ, 2013 WL 12219252, at *3, 2013 U.S. Dist. LEXIS

202820, at *10 (S.D.Fla. June 21, 2013) (approving fees for FLSA collective action settlement, holding "Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.); Adams v. Gilead Group, LLC, et. al., Case No. 3:16- cv-1566-J-PDB, ECF No. 107 (June 25, 2019) (awarding a few award of 33% of the Settlement fund in an FLSA collective action, and an additional $9,996.94 for costs); Freeman v. Trainingwheel Corp., LLC, 2020 WL 7401488 (M.D. Fla. June 26, 2020) (Approving common Fund in FLSA Collective Action that provides Plaintiff's counsel fees of 1/3 the Gross Settlement amount and reimbursement of their out-of-pocket costs).[2]   Furthermore, District Courts throughout the Country regularly award 30% to 50% for fees in class and collective actions. See, e.g., Whittington v. Taco Bell of Am., Inc., 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (Finding that the agreed upon 39% covering fees and costs was reasonable as a matter of law in an FLSA collective action).  Plaintiffs' counsel's request for approval of their common fund fee of 33% fee also falls within the range

---

[2] See also Vogenberger, 2015 WL 1883537 (awarding 33% of common fund to Plaintiff's counsel in FLSA collective action); Kemper v. Rent-A-Center, Inc., No. 4:00-cv-00435-RH-WCS [Dkts. 14-15] (N.D. Fla. 2000) (same); Graves v. Estes Heating & Air Conditioning, Inc., Case No. 3:14-cv-0084- TCB, Dkt. 47 (N.D. Ga. 2015) (awarding fee of 33.33% of the common fund in FLSA case);Encarnacion v. J.W. Lee, Inc., 2015 WL 6437686, at *4 (S.D. Fla. Oct. 22, 2015) (approving class and FLSA collective action settlement of $6,000,000, which included $1,641,686.06 as attorneys' fees and $18,763.94 for costs.); Stahl, 2008 WL 2267469 (Approving attorney award of 28.8% of the $13,137,365 common fund, or $3,659,365 for fees and costs in wage and hour class action); Signorelli v. Utiliquest LLC, 5:08-cv-38-OC-10GRJ, Docket Entry 46 (July 25, 2008) (Hodges, J.) (awarding $3,000,000.00 for attorneys' fees out of the $10,000,000.00 common fund); Kreher v. City of Atlanta, Georgia, 2008 WL 113999561 (N.D. Ga. Sept. 30, 2008) (Approving common fund in FLSA Collective action that provides Plaintiff's counsel $2,410,000 from a $7,500,000 common fund, or 32.13%); Mosley v. Lozano Insurance Adjusters, Inc., 2021 WL

of the private marketplace, "where contingency-fee arrangements are often between 30 and 40 percent of any recovery." <u>George</u>, 369 F.Supp.3d at 1383.

Plaintiff's counsel took this case on a contingency basis, with a risk of $0 recovery and with an agreement of the 3 named Plaintiffs that provides for the payment of attorneys' fees in the amount of 33.33%. Because of this contingency fee arrangement, Plaintiff's counsel has not received any payment for any of their time litigating the case since 2020, nor have they received reimbursement for their out-of-pocket costs expended.      Furthermore, Plaintiffs' counsel, Mitchell Feldman, Esq. has extensive experience litigating wage and hour class actions and FLSA collective actions for 2 decades and in numerous district courts including those in Connecticut, New York, and Georgia. Further, the results in this matter, in the opinion of Plaintiffs' counsel, are excellent and warrant such an amount, given Defendant's vigorous defenses and the results obtained on the Plaintiffs' behalf as outlined herein. The approximately 4 hours of overtime for each eligible workweek obtained for the Plaintiffs and the individual recovery for each Plaintiff in the range of many thousands of dollars, in unpaid wages including liquidated damages for the Plaintiffs is a very excellent result. Plaintiffs' Counsel undertook the financial risk of potentially unsuccessful, time consuming and costly litigation to recover overtime pay for workers they believe were not paid for all hours worked, and as to whom Defendant asserted and denied throughout this litigation were owed even $1.00 in back wages. In discussing the inherent risk of prosecuting a

national scale FLSA collective action litigation on a contingency fee, the Northern

District of Georgia stated:

> In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. . . . That risk warrants an appropriate fee. Indeed, a "contingency fee arrangement often justifies an increase in the award of attorney's fees." <u>Lunsford</u>, 2014 WL 12740375, at *14, 2014 U.S. Dist. LEXIS 200716, at *43 (citing <u>Sunbeam</u>, 176 F.Supp.2d at 1335 (quoting <u>Behrens</u>, 118 F.R.D. at 548); see also <u>In re Continental Ill. Sec. Litig.</u>, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent-fee basis, plaintiffs' counsel must be adequately compensated for the risk of non-payment); <u>Ressler</u>, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award")).

<u>George</u>, 369 F. Supp. 3d at 1380–8. The record here leaves no doubt that the fee

request is appropriate and comports with fees awarded in similar cases.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Parties respectfully request that this

Honorable Court approve the Settlement Agreement attached as Exhibit A by

entering the [Proposed] Final Judgment, included as Attachment 1 to the

Settlement Agreement, and dismissing the case with prejudice.

Respectfully submitted this 28th day of March, 2022.

/s/ *Mitchell L. Feldman*
Mitchell L. Feldman
FB# 0080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Avenue, #101
Tampa, Florida 33626
Tel: (877) 946-8293
Fax: (813) 639-9376
E-mail:
mfeldman@flandgatrialattorneys.com
2nd Email: mal@feldmanlegal.us
*Attorneys for Plaintiffs*

/s/*Tonya B. Braun*
Tonya B. Braun (Ohio Bar No. 0075048)
Email: tbraun@jonesday.com
(admitted pro hac vice)
Elizabeth L. Dicus (Ohio Bar No. 0081219)
Email: eldicus@jonesday.com
(admitted pro hac vice)
JONES DAY
325 John H. McConnell Boulevard,
Suite 600 Columbus, Ohio 43215-2673
Tel: (614) 469-3939
Fax: (614) 461-4198
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or Parties of record and also via any additional manner noted below.

<u>/s/ *Mitchell L. Feldman*</u>
MITCHELL L. FELDMAN
Florida Bar No.: 0080349