## SETTLEMENT AGREEMENT

This Settlement Agreement, along with all exhibits hereto (collectively, the "Settlement Agreement"), is entered into by and between Verizon Connect Fleet USA LLC ("Defendant"), on the one hand, and Lauren Garnick, Tshacha Romeo, Corey Hanvey (collectively, the "Named Plaintiffs"), individually and on behalf of themselves and the opt-in plaintiffs who have filed consent forms to join this action (the "Opt-In Plaintiffs," and together with the Named Plaintiffs, "Plaintiffs"), in the case of *Garnick v. Verizon Connect Fleet USA LLC*, Case No. 8:20-cv-01474-MSS-TGW, filed in the United States District Court for the Middle District of Florida (the "FLSA Lawsuit").  This Settlement Agreement is subject to approval by the Court.

## RECITALS

WHEREAS, on June 29, 2020, the Named Plaintiffs Lauren Garnick and Tshacha Romeo initiated this collective action lawsuit, pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), on behalf of themselves and other non-exempt Business Development Representatives and Sales Partners who worked for one of Defendant's offices located in Florida, North Carolina, Illinois, Arizona, and California, alleging unpaid, off-the-clock work claims; and on July 13, 2020, filed an Amended Complaint adding Corey Hanvey as a Named Plaintiff.

WHEREAS, on August 17, 2020, Defendant filed an Answer denying the material allegations of the Amended Complaint.

WHEREAS, on September 9, 2020, the Named Plaintiffs filed a Motion for Conditional Certification to Proceed as a Collective Action and for Court Supervised Issuance of Notice to the Putative Class, seeking to certify a class of Business Development Representatives and Sales Partners who work or worked for one of Defendant's office locations in Florida, North Carolina, Illinois, Arizona and/or California during the relevant period.

WHEREAS, on October 14, 2020, Defendant filed its Opposition to the Named Plaintiffs' Motion for Conditional Certification to Proceed as a Collective Action and for Court Supervised Issuance of Notice to the Putative Class.

WHEREAS, the Parties engaged in extensive discovery negotiations and entered into a discovery agreement pursuant to which Defendant provided ESI time-stamped records for an agreed-upon number of Plaintiffs including timekeeping and payroll information, as well as call logs, CRM data, and email, and badge swipe records, and Plaintiffs responded to FLSA Court Interrogatories.

WHEREAS, on August 30, 2021, the Court granted the Named Plaintiffs' Motion for Conditional Certification and for Court Supervised Issuance of Notice to the Putative Class, conditionally certifying a class of Business Development Representatives and Sales Partners for the maximum three-year statute of limitations period.

WHEREAS, in September 2021, notice of the FLSA Lawsuit was sent via First Class mail to the conditionally certified class comprising 912 individuals; after which, 179 individuals filed timely opt-in consent forms, and Defendant did not oppose the filing of another 6 consent forms for individuals outside the opt-in period.

WHEREAS, pursuant to the Court's October 29, 2021 Amended Case Management and Scheduling Order in the FLSA Lawsuit, the Parties scheduled mediation for January 14, 2022.

WHEREAS, Defendant provided additional timekeeping and payroll records to facilitate settlement discussions.

WHEREAS, on January 14, 2022, a full-day mediation was held with Kay L. Wolf, a Middle District of Florida-approved mediator.  The Parties did not reach an agreement, but continued settlement discussions over the next three weeks.  On February 4, 2022, the Parties arrived at an agreement to settle Plaintiffs' off-the-clock work claims and dismiss the FLSA Lawsuit with prejudice, and further agreed to enter into a settlement agreement in connection with the FLSA Lawsuit.

WHEREAS, Defendant denies that it engaged in any unlawful or improper conduct including, expressly, all off-the-clock work claims of Plaintiffs; denies all liability and damages of any kind to anyone regarding Plaintiffs' off-the-clock work claims; and denies that the FLSA Lawsuit could be litigated on a collective action basis; but nonetheless, without admitting or conceding any liability or damages whatsoever or the propriety of a representative action, has agreed to settle on the terms and conditions in this Settlement Agreement to avoid the burden, expense, and uncertainty of continuing the FLSA Lawsuit.

WHEREAS, the Parties recognize that the final outcome in the FLSA Lawsuit is uncertain and that achieving a final result through the litigation and appeal process would require substantial additional risk, time, and expense.

WHEREAS, Named Plaintiffs and Plaintiffs' Counsel have investigated and evaluated the facts and law relating to Plaintiffs' claims asserted in the FLSA Lawsuit and other potential off-the-clock claims to determine how best to serve the interests of the Plaintiffs and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of the Plaintiffs, and that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the FLSA Lawsuit.

WHEREAS, the Parties have agreed to settle the FLSA Lawsuit as to the Named Plaintiffs and Opt-In Plaintiffs, all of whom are parties to this Settlement Agreement by virtue of the Named Plaintiffs and Plaintiffs' Counsel executing the Settlement Agreement on their behalf.

WHEREAS, the Settlement Agreement is intended to, and does, effectuate the full, final, and complete resolution of all off-the-clock claims of the Plaintiffs, including without limitation all known or unknown claims for overtime compensation, liquidated damages, penalties, and interest.

NOW THEREFORE, the Parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, do hereby agree as follows:

## AGREEMENT

1. **Definitions**

   1.1   **Claims Administrator**. "Claims Administrator" means Rust Consulting, the entity selected by the Parties to provide claims administration services pursuant to this Settlement Agreement.

   1.2   **Plaintiffs' Counsel**. "Plaintiffs' Counsel" refers to Mitchell L. Feldman and Feldman Legal Group. For purposes of providing any notices required under this Settlement Agreement, Plaintiffs' Counsel shall refer to Mitchell L. Feldman, Feldman Legal Group, 6916 W. Linebaugh Avenue, Suite 101, Tampa, FL 33625.

   1.3   **Defendant's Counsel**. "Defendant's Counsel" refers to Jones Day. For purposes of providing any notices required under this Settlement Agreement, Defendant's Counsel shall refer to Tonya B. Braun, Jones Day, 325 John H. McConnell Boulevard, Suite 600, Columbus, OH 43215.

   1.4   **Named Plaintiffs**. "Named Plaintiffs" shall mean Lauren Garnick, Tshacha Romeo, and Corey Hanvey.

   1.5   **Opt-In Plaintiffs**. "Opt-In Plaintiffs" shall mean the individuals who opted in to the FLSA Lawsuit through the date the Agreement is submitted to the Court, except that for purposes of this Settlement Agreement, the term shall not include the Named Plaintiffs. A list of the Named Plaintiff and Opt-In Plaintiffs (together "Plaintiffs") is attached as Exhibit 1.

   1.6   **Covered Period**: The "Covered Period" is the date three years prior to the date each Named Plaintiff and Opt-In Plaintiff filed with the Court his or her consent to join the FLSA Lawsuit[1] until the latter of their termination of employment or the date of the order granting approval of the Settlement Agreement.

   1.7   **Effective Date**. "Effective Date" shall be the date that all of the following have occurred: the Court grants approval of the Settlement Agreement, and enters judgment, in form attached as Exhibit 2 (or similar form), including the request of Plaintiffs' counsel for attorneys' fees and reasonable costs.

2. **Consideration**

   2.1   **Settlement Amount.** Defendant agrees to a gross settlement amount of $3,200,000.00 ("Settlement Amount"), to be paid and allocated as set forth herein. The Settlement Amount shall cover, resolve, and fully satisfy any and all amounts due under this Settlement Agreement for the FLSA Lawsuit, including: (1) Settlement Payments to be paid to Plaintiffs; (2) attorneys' fees and costs

---

[1] For any Plaintiff who opted in after the Notice Period of September, 2021, the "Covered period" adds an additional 93 days due to the Court tolling the SOL from the Court's FLSA Scheduling order.

approved by the Court; and (3) the costs of settlement administration capped at $10,000 (or at the time the allocations are made pursuant to Section 2.5). Settlement Payments shall not constitute the payment of overtime, salary, wages, and/or compensation under the terms of any company benefit plan or for any purpose except for resolving the pending FLSA overtime wage claims and the tax purposes as described in Section 5. Defendant's settlement liability, other than the employer-portion share of payroll taxes, shall not exceed $3,200,000.00 under any circumstances.

2.2 **Settlement Payments Made to Plaintiffs.** As further described below in Section 2.5, the total pro rata settlement payments to Plaintiffs will be equal to the amount of the Settlement Amount remaining after deducting the administrative costs of settlement, and then the Court-approved attorneys' fees and costs.

2.3 **Settlement Amount Payable as Attorneys' Fees and Costs.** Plaintiffs' Counsel will seek their attorneys' fees of not more than one-third of the Settlement Amount, in the amount of $1,066,656.00, plus reimbursement of incurred litigation costs and expenses in the amount of $21,395.28. Defendant will not oppose or object to such requests.

2.4 **Settlement Amount Payable as Settlement Administration Costs.** The cost of administration of the settlement payments and related tax documentation to the Plaintiffs shall be paid from the gross Settlement Amount.

2.5 **Allocation of Settlement Payments Made to Plaintiffs.** Each Plaintiff will receive an individual Settlement Payment from the Net Settlement Fund (the Gross Settlement Amount less deduction of attorney's fees and costs and expenses, including the claims administrator's fees) according to the following formula as calculated by the Plaintiff's counsel, and approved by the Defendant. The Claims Administrator will then distribute the individual "Settlement Payments" for all Plaintiffs as pursuant to the following formula as follows:

(A) The Claims Administrator shall distribute a "Net Settlement Amount" for each Plaintiff which shall equal the Settlement Amount minus the costs of administration of the settlement proceeds (*see* Sections 2.1, 2.4), the amount that the Court awards Plaintiffs' Counsel for attorneys' fees and reimbursement of costs (*see* Section 2.3), and additional consideration afforded to the Named Plaintiffs in exchange for executing General Releases (*see* Section 7.1). Plaintiff's counsel will provide the Claims Administrator with the gross and net allocations for the Plaintiffs.

(B) The Individual Net Settlement Amount payments are to be allocated to each plaintiff for his or her pro rata share of the Net Settlement Amount pursuant to the following factors: 1) each person's net workweeks within the applicable statute of limitations; 2) the estimated average unpaid weekly overtime hours reported by each Plaintiff in interrogatories and declarations, or alternatively the average overtime weekly hours from the

-4-

damages model; and 3) the individual Plaintiff's average overtime rate for the covered period.  Using these factors, each person's pro rata share (%) of the Net Settlement is then determined by dividing each person's individual share by the total sum for all Plaintiffs.   In the event a Plaintiff's pro rata share is calculated as $0, the Plaintiff will receive a minimum payment of $50.00, and the pro rata shares of the Net Settlement will be recalculated minus the minimum payments.  Plaintiffs' Counsel will prepare and send the net allocations to the Claims administrator and to Defendant's Counsel for review before distribution and to re-confirm the net payments amounts.

2.6    **Remaining Amounts from Settlement Amount and Uncashed Checks.**  Any unused portions of the reserve for claims administration will revert to Defendant. Additionally, any settlement check not timely cashed shall be void, payment may be stopped on such check, and the amount thereof shall revert to Defendant 30 business days after the close of the 120-business day deadline to negotiate settlement checks, or will be subject to the unclaimed property laws of the Plaintiff's last known state of residence, as applicable.

3.    **Stay; Motion to Court Approval of Settlement; Consequences if Not Approved.**  The Parties agrees that by having notified the court of a settlement in this action, that this case has been effectively stayed with prejudice to either party, and that no other action shall be taken except such proceedings as necessary to obtain approval of either their forthcoming jointly filed Motion for Approval of Settlement with the Court, including the proposed Order Approving Settlement and Dismissal with Prejudice, in the form attached hereto as Exhibit 1 (or substantially similar form mutually agreeable to the parties). The Parties will cooperate and take all necessary steps to effectuate judicial approval of the Settlement Agreement including the approval of the payment of Plaintiff's attorneys' fees and costs. The Parties agree that this settlement is contingent upon the Motion for Approval of the Settlement Agreement, and should the Court not approve any material terms in its entirety, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded initial approval, including, if impasse is reached, by continuation of mediation with mediator Kay L. Wolf and resubmitting the settlement for approval.  If the settlement is not approved as resubmitted or if the Parties are not able to reach another agreement, litigation of the FLSA Lawsuit resumes.  If litigation of the FLSA Lawsuit resumes, the case will proceed as if no settlement has been attempted.

4.    **Claims Administrator.**  If the Court grants approval of the Settlement Agreement, the settlement will be administered by Rust Consulting as the third-party Claims Administrator ("Claims Administrator").  At, or before, the time the allocations are made pursuant to Section 2.5, the Claims Administrator will agree to a not-to-exceed cap of $10,000 for all fees and expenses for the claims administration work.   Once retained, the Claims Administrator will establish a "qualified settlement fund" within the meaning of Treasury Regulations § 1.468B-1, et seq. ("QSF"), to which the Defendant will pay the Settlement Amount as defined in Section 2.1, and the employer-portion share of taxes as set forth herein.   The Claims Administrator will be responsible for administering the entire settlement, including all applicable tax withholding, and issuing all applicable tax forms and completing all required tax reporting.

5. **Tax Matters.**

5.1 Within twenty-one (21) business days following the Effective Date, Defendant will transfer the funds described in Section 2.1 of this Settlement Agreement into one or more Qualified Settlement Funds ("QSFs"), within the meaning of Treasury Regulation § 1.468B-1, et seq.  In connection with the foregoing, the following definitions shall apply:

(A) Defendant shall be a "transferor" within the meaning of Treasury Regulation § 1.468B-1(d)(1) to the QSF(s) with respect to the amounts transferred;

(B) The Claims Administrator shall be the "administrator" of the QSF(s) within the meaning of Treasury Regulation § 1.468B-2(k)(3), responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF(s), paying from the QSFs any taxes owed by or with respect to the QSFs, and complying with any applicable information reporting or tax withholding requirements imposed by Treasury Regulation § 1.468B-2(1)(2) or any other applicable law on or with respect to the QSFs, and in accordance with Section 3.5(B) of this Settlement Agreement; and

(C) Defendant and the Claims Administrator shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including the relation-back election within the meaning of Treasury Regulation § 1.468B-1(j).

5.2 The Claims Administrator shall promptly provide a current Internal Revenue Service ("IRS") Form W-9 of the QSF to Defendant.

5.3 For tax purposes, with respect to the Settlement Payments, 50% of each Plaintiff's payment of his or her portion of the Settlement Amount pursuant to Paragraph 2.5 will be treated as wages and 50% of such payment shall be treated as liquidated damages.  The Claims Administrator will withhold from each such payment that is treated as wages the individual's share of all applicable federal, state, and local income and employment taxes, and shall report that portion to the IRS and the payee under the payee's name and social security number on an IRS Form W-2.  The portion of each such payment that is treated as liquidated damages are not wages and will be paid without withholding, and will be reported, along with each Plaintiff's pro-rata share of attorneys' fees, to the IRS and the payee under the payee's name and social security number on an IRS Form 1099-Misc. in Box 3.  With respect to Plaintiffs who are current Verizon Connect employees, withholding amounts shall be determined with reference to each of those employee's last IRS Form W-4 and applicable state equivalent provided to, and on file with, Verizon Connect.

5.4     Attorneys' fees and costs paid pursuant to Section 2.3 are not wages, and shall be paid without withholding, and such fees and costs shall be reported by the Claims Administrator to the IRS and the applicable attorney under the law firm's name and taxpayer identification number on an IRS Form 1099-Misc.

5.5     Defendant will pay to the QSF the employer-portion share of the FICA tax and any federal and state unemployment tax, with respect to payments of the Settlement Amount that are treated as wages.

5.6     Plaintiffs' Counsel and each Plaintiff agree that he or she shall be solely responsible for all taxes, interest, and penalties due with respect to any payment received by him or her pursuant to this Settlement Agreement (other than the employer-portion share of payroll taxes as set forth above) and shall indemnify, defend and hold Defendant harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on Defendant as a result of Plaintiffs' Counsel's and/or a Plaintiff's failure to timely pay such taxes that were not employer obligations.

5.7     Plaintiffs and Defendant shall have no liability or responsibility whatsoever for taxes of the QSF (other than Defendant's funding of the employer obligations as set forth above) or the filing of any tax returns, information reports or other documents with the IRS or any other taxing authority with respect thereto. Further, Defendant shall have no liability or responsibility whatsoever for taxes of Plaintiffs' Counsel.

5.8     Per Treasury Department Circular 230, this Agreement is not intended to provide tax advice, and any tax advice contained in this Agreement or any notice summarizing this Agreement is not intended to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending to another party any transaction or matter addressed herein.

6.     **Settlement Administration.**  The Parties agree to the following procedure for settlement administration, unless superseded by applicable court order.

(A)     Within (7) business days after the Court approves the Settlement Agreement, Plaintiffs' Counsel will provide the Claims Administrator in a readable and workable format inclusive of applicable formula functions such as a Microsoft Excel spreadsheet or Microsoft Access database, the ratable amount of each Plaintiff's Settlement Payment as described in Section 2.5.

(B)     Within (7) business days after the Court approves the Settlement Agreement, Defendant will provide the names, mailing addresses, and Social Security Numbers of all Plaintiffs to the Claims Administrator ("Contact Information"). During this same time period, Plaintiffs' Counsel will provide the Claims Administrator with its most updated list of mailing

and email addresses for Plaintiffs, which updated information shall be used if in conflict with the Contact Information provided by Defendant and the individual is not a current employee.

(C)    Within (7) business days of receiving the list identifying each Plaintiff's Settlement Payment described in subpart (A) above, the Claims Administrator will calculate and notify Defendant of the final amount due from Defendant for the employer's share of payroll taxes, including FICA tax and any federal and state unemployment tax, with respect to payments of the Settlement Amount that are treated as wages.

(D)    Within (21) business days after the Court approves the Settlement Agreement, Defendant will fund the QSF with the Settlement Amount as defined in Section 2.1, approved by the Court, and the employer's share of payroll taxes described in subpart (C) above.

(E)    Within (7) business days after the QSF is funded as provided for in subpart (D) above, the Claims Administrator will transmit the Court-approved attorneys' fees and costs to Plaintiffs' Counsel by bank wire as they direct.

(F)    Within (21) business days after the QSF is funded as provided for in subparts (D) above, the Claims Administrator will send by First Class Mail the settlement checks for each Plaintiff's Settlement Payment.

(G)    On a rolling basis, the Claims Administrator will make reasonable efforts to obtain valid current addresses through a "skip trace" search through the National Change of Address ("NOCA") database for any Plaintiffs whose settlement check is returned as undeliverable.  Defendant and Plaintiffs' Counsel will provide their best information to and cooperate with the Claims Administrator to respond to any reasonable inquiries from the Claims Administrator necessary to complete its responsibilities under this Section.  Any and all information provided for the purpose of locating persons whose settlement check is returned as undeliverable, including social security numbers, provided by Defendant shall be held in confidence, retained in an electronically secure manner, and shall be used solely for purposes of effectuating this Settlement Agreement.

(H)    For any Plaintiff whose settlement check is not returned undeliverable, but who contacts the Claims Administrator (whether directly or through Plaintiffs' Counsel) to report an address update or a failure to receive the settlement check, the Claims Administrator will, after verification of identity, stop payment on the first check and re-issue a new check to the updated mailing address.

(I)    On a rolling basis, the Claims Administrator will provide the Parties with copies of cancelled checks, including the endorsement on the back of the

check or other proof of endorsement, for all settlement checks that have been cashed or paid.

(J)     The Claims Administrator's duties shall also include providing periodic updates to the Parties' counsel regarding withdrawals, skip tracing and remailing(s) for any mailings returned undeliverable; responding to class member inquiries; validating a Plaintiff's claim of lost or destroyed check(s) before reissuing replacement checks for such lost or destroyed check(s); and handling and/or correcting any administrative errors such as erroneous payments or check(s) that are both physically deposited at a financial institution and deposited remotely.   At the conclusion of the settlement process, the Claims Administrator will provide Plaintiffs' Counsel with a final updated contact list for Plaintiffs, and will provide both parties a final accounting of Plaintiffs who negotiated their checks.

(K)     Plaintiffs shall have 120 business days after mailing to cash their checks. Any settlement checks not cashed within 120 business days after mailing will be voided and a stop-payment will be issued. Within twenty (20) business days after the date 120 business days have passed since the checks were mailed, the Claims Administrator shall provide a list to Plaintiffs' Counsel and Defendant's Counsel of checks not delivered or not cashed. Within thirty (30) business days after the date 120 business days have passed since the checks were mailed, the amounts of any uncashed settlement checks shall revert to Defendant or will be subject to the unclaimed property laws of the Plaintiff's last known state of residence, as applicable.

(L)     Neither Defendant, Defendant's Counsel, Plaintiff, nor Plaintiffs' Counsel will have any liability for lost or stolen checks, forged signatures on checks, unauthorized negotiation of checks, or failure to timely cash a check within the 120 business day period.

7.     **Release**

7.1     **General Release of Known and Unknown Claims By Named Plaintiffs Garnick, Hanvey and Romeo.**   In addition to the claims released as set forth in Section 8.2 below, the Named Plaintiffs, in exchange for the payment of consideration in the sum of $250.00 to each, shall release and herein does and forever discharge Defendant, together with Defendant's parents, subsidiaries, affiliates, divisions, partners, members, joint ventures, predecessor and successor corporations and business entities, past, present, and future and its and their agents, directors,    officers,    employees,    shareholders,    insurers    and    reinsurers, representatives, attorneys, and employee benefit plans and administrators (and the trustees or other individuals affiliated with such plans) past, present, and future (collectively, the "Released Parties") of and from any and all past and present matters, claims, demands, and causes of action of any kind, whatsoever, which the Named Plaintiffs assert or could assert, whether known or unknown, at common

law or under any statute, rule, regulation, order or law, whether federal, state, or local, or on any grounds whatsoever, including without limitation, claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the federal Equal Pay Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, the Employee Retirement Income Security Act of 1974, the Racketeer Influenced and Corrupt Organizations Act, the Financial Reform Recovery and Enforcement Act of 1989, Section 1981 of Title 42 of the United States Code, the federal Worker Adjustment and Retraining Notification Act, any other federal, state, or local laws concerning workplace rights or obligations or payment of wages, claims for violation of privacy rights, claims for violation of civil rights, claims for denial of equal rights, discrimination, wrongful termination, retaliation, breach of contract, equitable remedies, interference with advantageous relations, all tort claims, and all claims that were or could have been raised by the Named Plaintiffs in the FLSA Lawsuit or which arose prior to the date the Named Plaintiffs sign this Settlement Agreement against the Released Parties with respect to any event, matter, claim, damage or injury arising out of the Named Plaintiffs' employment with Defendant, the termination of such employment, any application for employment with Defendant, and/or the Named Plaintiffs' eligibility for employment with Defendant, and/or with respect to any other claim, matter, or event arising prior to execution of this Settlement Agreement by the Named Plaintiffs.

7.2   **Opt-In Release.**  The Court's approval of the language of the release to be included on the back of the settlement checks (or notice) issued to Plaintiffs is a condition precedent to this Settlement Agreement.  The back of the Settlement Payment check will contain the following language set forth in Section 8.2(A) or (B), as applicable, below the endorsement/signature line:

(A)   **For Opt-In Plaintiffs who work or worked as non-exempt Business Development Representatives and/or Sales Partners for one of Defendant's office locations in any state other than California**: "My endorsement of this check acknowledges that I am receiving this payment pursuant to the resolution of the lawsuit captioned *Garnick v. Verizon Connect Fleet USA LLC*, Case No. 8:20-cv-01474-MSS-TGW (M.D. Fla.), and that I opted into the case as a party plaintiff under Section 216(b) of the Fair Labor Standards Act.  I understand that my claims in this case have been resolved and that I have released all off-the-clock work claims under federal, state, local, or other applicable law against Verizon Connect Fleet USA LLC, through the date of the entry of the order of the Court approving the settlement, including without limitation all known or unknown claims for overtime compensation, liquidated damages, penalties, and interest."

(B)   **For Opt-In Plaintiffs who work or worked for as non-exempt Business Development Representatives and/or Sales Partners for Defendant's office location in California:**  "My endorsement of this check acknowledges that I am receiving this payment pursuant to the resolution of the lawsuit captioned *Garnick v. Verizon Connect Fleet USA LLC*, Case No.

8:20-cv-01474-MSS-TGW (M.D. Fla.), and that I opted into the case as a party plaintiff under Section 216(b) of the Fair Labor Standards Act. I understand that my claims in this case have been resolved and that I have released all off-the-clock work claims under federal law against Verizon Connect Fleet USA LLC, through the date of the entry of the order of the Court approving the settlement, including without limitation all known or unknown claims for overtime compensation, liquidated damages, penalties, and interest."

7.3 **Release of Fees and Costs.** Plaintiffs' Counsel and the Named Plaintiffs, on behalf of the Opt-In Plaintiffs, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant (and/or any others as to whom claims are released in Section 7) for attorneys' fees or costs associated with the FLSA Lawsuit and Plaintiffs' Counsel's representation of any and all individuals in the FLSA Lawsuit. Plaintiffs' Counsel further understand and agree that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Plaintiffs' Counsel's representation of these individuals. Defendant (as well as all others as to whom claims are released in Section 7) shall have no additional liability for any fees and costs associated with the FLSA Lawsuit.

8.  **No Assignment.** Plaintiffs' Counsel and the Named Plaintiffs, on behalf of the Opt-In Plaintiffs, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the FLSA Lawsuit or any related action(s).

9.  **List of Plaintiffs**. The Parties have reviewed the list of individuals who submitted consent forms to join the FLSA Lawsuit. These individuals are listed in Exhibit 1.

10. **Non-Admission of Liability.** Defendant in no way admits any violation of law or any liability whatsoever to the Named Plaintiffs, the Opt-In Plaintiffs or any other individual, individually or collectively, all such liability being expressly denied. Likewise, Defendant in no way admits to the suitability of the FLSA Lawsuit for collective action litigation other than for purposes of settlement. Rather, Defendant enters into this Settlement Agreement to avoid further protracted litigation and to resolve and settle all disputes. Settlement of the FLSA Lawsuit, negotiation and execution of this Settlement Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Settlement Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on part of Defendant or of the truth of any of the factual allegations asserted in the FLSA Lawsuit; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Settlement Agreement. The Parties understand and agree that this Settlement Agreement and all

exhibits hereto are settlement documents and shall be inadmissible in evidence in any proceeding, except an action or proceeding (including appeals) to approve, interpret, or enforce the terms of this Settlement Agreement.

11.    **Media Statements.**  Named Plaintiffs and Plaintiffs' counsel shall keep the terms of the settlement confidential until it is approved by the Court.  If the Named Plaintiffs or Plaintiffs' counsel receives an inquiry about settlement from the media, they may respond by confirming the terms of the settlement to the extent the terms are publicly available and known.

12.    **Return of Documents and Information**.  Named Plaintiffs and Plaintiffs' Counsel agree that none of the documents and information provided to them by Defendant shall be used for any purpose other than prosecution of the FLSA Lawsuit.  No later than ten (10) days after Defendant transfers the funds pursuant to Section 7.  Named Plaintiffs through Plaintiffs' Counsel shall provide written confirmation, certified under penalty of perjury, that all records and information provided during the FLSA Lawsuit have been destroyed.

13.    **Miscellaneous.**

13.1    **Severability.**  The nonmaterial provisions of this Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its nonmaterial provisions shall not affect the validity or enforceability of any of the other provisions.

13.2    **Cooperation Between The Parties; Further Acts**.  The Parties shall cooperate fully with each other and shall use reasonable efforts to obtain the Court's approval of this Settlement Agreement and all of its terms.  The Parties, upon the request of any other party, agree to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Settlement Agreement.

13.3    **Extension of Time.**  The Parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court.

13.4    **Entire Agreement.**  This Settlement Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein.  All prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Settlement Agreement.

13.5    **Binding Effect**.  This Settlement Agreement shall be binding upon the Parties and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

13.6    **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Settlement Agreement at arms' length.  All terms and conditions of this Settlement Agreement in the exact form set forth in this

Settlement Agreement are material to this Settlement Agreement and have been relied upon by the Parties in entering this Settlement Agreement.

13.7   **Captions.**   The captions or headings of the sections and paragraphs of this Settlement Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Settlement Agreement.

13.8   **Construction.**  This Settlement Agreement shall be construed in accordance with the laws of the State of Florida.  The determination of the terms and conditions of this Settlement Agreement has been by mutual agreement of the Parties.  Each Party participated jointly in the drafting of this Settlement Agreement; therefore the terms and conditions of this Settlement Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

13.9   **Force and Effect.**  Following the Effective Date, if any provision of this Settlement Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Settlement Agreement will remain in full force and effect.

13.10   **Continuing Jurisdiction**.   The Court shall retain jurisdiction over the interpretation and implementation of this Settlement Agreement as well as all matters arising out of, or related to, the interpretation or implementation of this Settlement Agreement and of the settlement contemplated hereby.  The Court shall not have jurisdiction to modify the terms of this Settlement Agreement or to increase Defendant's payment obligations hereunder.

13.11   **Waivers, etc. to be in Writing.**  No waiver, modification or amendment of the terms of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Settlement Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Settlement Agreement.

13.12   **Counterparts.**   The Parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Parties had signed the same instrument.

13.13   **Facsimile or Emailed Signatures.**  Any signature made and transmitted by facsimile or email for the purposes of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall

be binding upon the Party whose counsel transmits the signature page by facsimile or email.

13.14 **Signature by Plaintiffs' Counsel.**  By its signature below, the law firm of Feldman Legal Group represents it has been authorized by the Plaintiffs to sign this Settlement Agreement on their behalf.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Lauren Garnick**

Dated this _____ day of_____, 2022.

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Tshacha Romeo**

Dated this _____ day of_____, 2022.

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Corey Hanvey**

Dated this _____ day of_____, 2022.

*mitchell feldman*

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

**Counsel for Plaintiffs**

Date: 03/23/2022

_____
Mitchell Feldman
Feldman Legal Group
Plaintiffs' Counsel

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

**Verizon Connect Fleet USA LLC**

Date: Mar 28, 2022

By: Daniel P. Murphy
_____

Printed Name: Daniel P. Murphy

Title: Authorized Signatory

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
Lauren Garnick (Mar 23, 2022 14:38 EDT)
**Lauren Garnick**

Dated this ____ day of _____, 2022.

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Tshacha Romeo**

Dated this ____ day of _____, 2022.

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Corey Hanvey**

Dated this ____ day of _____, 2022.

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY
UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.


_____

**Lauren Garnick**


Dated this ____ day of_____, 2022.


THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY
UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____

**Tshacha Romeo**


Dated this ____ day of_____, 2022.


THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY
UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.


_____

**Corey Hanvey**


Dated this ____ day of_____, 2022.

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____

**Lauren Garnick**

Dated this _____ day of _____, 2022.

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____

**Tshacha Romeo**

Dated this _____ day of _____, 2022.

THE FOREGOING SETTLEMENT AGREEMENT HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
Corey Hanvey (Mar 23, 2022 14:26 EDT)
**Corey Hanvey**

Dated this _____ day of _____, 2022.

**Garnick, et al. v. Verizon Connect Fleet USA, LLC**
**USDC ND Florida, Case No. 8:20-cv-01474**
**Exhibit 1: List of Opt-Ins Who are Settlement Class Members**

|    | Last Name   | First Name |
|----|-------------|------------|
| 1  | Anderson    | Rebecca    |
| 2  | Austin      | Timothy    |
| 3  | Baez        | Luis       |
| 4  | Bahreini    | Amir       |
| 5  | Baierl      | Brandt     |
| 6  | Barnes      | Michael    |
| 7  | Barnhardt   | Jordan     |
| 8  | Barter      | Troy       |
| 9  | Bates       | Jeremy     |
| 10 | Benjamin    | Ronny      |
| 11 | Bennett     | Brandon    |
| 12 | Berber      | Alejandra  |
| 13 | Bolivar     | Christian  |
| 14 | Cecala      | John       |
| 15 | Chadwick    | Graham     |
| 16 | Chaney      | Paul       |
| 17 | Chraibi     | Ismail     |
| 18 | Clement     | Davin      |
| 19 | Cloyd       | Chase      |
| 20 | Collado     | Amanda     |
| 21 | Dahl        | Nikayla    |
| 22 | Dawn        | Ezra       |
| 23 | de Jesus    | Marisol    |
| 24 | De La Rosa  | Eduardo    |
| 25 | De La Rosa  | Erwin      |
| 26 | De Stio     | Joseph     |
| 27 | Deely       | Kathleen   |
| 28 | DeRico      | Tony       |
| 29 | Dinsfriend  | Aaron      |
| 30 | Ducos       | Jorge      |
| 31 | Duncan      | Austin     |
| 32 | Duysen      | Joseph     |
| 33 | Dye, III    | Daniel     |
| 34 | Elazab      | Omar       |
| 35 | Espinosa    | Celina     |
| 36 | Estime      | David      |
| 37 | Evans       | Bill       |
| 38 | Evans       | Darren     |
| 39 | Fagoaga     | Gilberto   |
| 40 | Falcones    | Stevens    |
| 41 | Ferri       | Jason      |
| 42 | Flores      | John       |
| 43 | Florez      | Vanessa    |
| 44 | Fonseca     | Michael    |

Garnick, et al. v. Verizon Connect Fleet USA, LLC
USDC ND Florida, Case No. 8:20-cv-01474
Exhibit 1: List of Opt-Ins Who are Settlement Class Members

|    | Last Name       | First Name  |
|----|-----------------|-------------|
| 45 | Fonseca         | Monica      |
| 46 | Foreman         | Erik        |
| 47 | Franc           | Eric        |
| 48 | Garcia          | Noe         |
| 49 | Garnick         | Lauren      |
| 50 | Garriss         | Brandon     |
| 51 | Gary, IV        | John        |
| 52 | Gates           | Tiffany     |
| 53 | Gawne, Jr.      | Daniel      |
| 54 | Gelyana         | Tedours     |
| 55 | Giles           | Gordon      |
| 56 | Gillis          | Christopher |
| 57 | Grinnell        | Kevin       |
| 58 | Grzywa          | Daniel      |
| 59 | Gubser          | Tyler       |
| 60 | Gumin           | Roger       |
| 61 | Gutierrez       | Leonel      |
| 62 | Hall            | Elaina      |
| 63 | Hansley         | Jeremy      |
| 64 | Hanvey          | Corey       |
| 65 | Hatfieldreavis  | Westly      |
| 66 | Hegler          | Megan       |
| 67 | Heicken         | Ian         |
| 68 | Hendle          | John        |
| 69 | Henery          | Toyia       |
| 70 | Herron-Beasley  | Daniel      |
| 71 | Hershberger     | Ryan        |
| 72 | Hydeman         | Zachary     |
| 73 | Ingalls         | Rick        |
| 74 | Ingram          | Rosalind    |
| 75 | Isa             | Amal        |
| 76 | Isaac           | David       |
| 77 | Jamnik          | Christopher |
| 78 | Jimenez         | Blanca      |
| 79 | Johnson         | Benjamin    |
| 80 | Johnston        | Eric        |
| 81 | Jones           | Chayne      |
| 82 | Jones           | Maliyah     |
| 83 | Jones           | Taylor      |
| 84 | Jones           | Tenisha     |
| 85 | Jones           | Winston     |
| 86 | Kalchik         | Steven      |
| 87 | Kavalec         | Christina   |
| 88 | Kelly           | Geoffrey    |

**Garnick, et al. v. Verizon Connect Fleet USA, LLC**
**USDC ND Florida, Case No. 8:20-cv-01474**
**Exhibit 1: List of Opt-Ins Who are Settlement Class Members**

|     | Last Name     | First Name |
|-----|---------------|------------|
| 89  | Kelly         | Jeffrey    |
| 90  | Kelly         | Paul       |
| 91  | Kennedy       | Michael    |
| 92  | Kieffer       | Brendan    |
| 93  | Koenig        | Brett      |
| 94  | Kotlyar       | Alla       |
| 95  | Kronenberger  | Joshua     |
| 96  | Liang         | Eric       |
| 97  | Lopez Garcia  | Rafael     |
| 98  | Lucas         | William    |
| 99  | Macquarrie    | Zachary    |
| 100 | Manning       | Trace      |
| 101 | Maradiaga     | Pablo      |
| 102 | Marsalla      | Briana     |
| 103 | Martin        | Brandon    |
| 104 | Martinez      | Joseph     |
| 105 | Maya          | Juan       |
| 106 | McMyne        | Gerald     |
| 107 | Medina        | Wilfred    |
| 108 | Merino        | Nataniel   |
| 109 | Merola        | Giuseppe   |
| 110 | Meyer         | Suzette    |
| 111 | Michelsen     | James      |
| 112 | Mikeal        | Larken     |
| 113 | Mikkelsen     | Dustin     |
| 114 | Miller        | Michael    |
| 115 | Mitchell      | Taylor     |
| 116 | Moore         | Aaron      |
| 117 | Moore         | Lynette    |
| 118 | Moore         | Millecent  |
| 119 | Morgan        | Scott      |
| 120 | Moring        | Stacie     |
| 121 | Mounds        | Vance      |
| 122 | Nelson        | Corey      |
| 123 | Nester        | Thomas     |
| 124 | Nitka         | William    |
| 125 | Ortiz         | Gabriel    |
| 126 | Oueini        | Robert     |
| 127 | Oxendine Jr.  | Lonnie     |
| 128 | Oz            | Kamil      |
| 129 | Padilla       | Jesus      |
| 130 | Patel         | Amit       |
| 131 | Perry         | Andrew     |
| 132 | Perry         | Joshua     |

**Garnick, et al. v. Verizon Connect Fleet USA, LLC**
**USDC ND Florida, Case No. 8:20-cv-01474**
**Exhibit 1: List of Opt-Ins Who are Settlement Class Members**

|     | Last Name | First Name |
|-----|-----------|------------|
| 133 | Perry | Sasha |
| 134 | Radojka | Sam |
| 135 | Raimondi | Anthony |
| 136 | Reback | Robert |
| 137 | Reyes | Karla |
| 138 | Reynolds | Chelsey |
| 139 | Reynolds | Mikaya |
| 140 | Richardson | Benjamin |
| 141 | Romanoskey | Renee |
| 142 | Romeo | Tschacha |
| 143 | Ross | Albert |
| 144 | Rubio | Julio |
| 145 | Rutherford | Alicia |
| 146 | Sagnella | Bianca |
| 147 | Samboy | Luis |
| 148 | Sandoval | Gabrielle |
| 149 | Santillanes | Richard |
| 150 | Schnulle | Jake |
| 151 | Sellner | David |
| 152 | Serrano | Victor |
| 153 | Siwik | Kevin |
| 154 | Small | Antonio |
| 155 | Smith | Dean |
| 156 | Smith | Jennifer |
| 157 | Smith | Maria |
| 158 | Spring | Alexis |
| 159 | Stone | Daniel |
| 160 | Sundeen | Travis |
| 161 | Syed | Wajid |
| 162 | Taylor | Devonta |
| 163 | Taylor | Joey |
| 164 | Thomas | Nicholas |
| 165 | Threats | Mandy |
| 166 | Thurab | Elyas |
| 167 | Trzcinski | Jeffrey |
| 168 | Turner | Michael |
| 169 | Twaddle | Drew |
| 170 | Unnever | Andrew |
| 171 | Venkatasamy | Raj |
| 172 | Walton | Benjamin |
| 173 | Warren | Henry |
| 174 | Watson | Sarah |
| 175 | Wehbe | Brenda |
| 176 | Wesselman | Michael |

**Garnick, et al. v. Verizon Connect Fleet USA, LLC**
**USDC ND Florida, Case No. 8:20-cv-01474**
**Exhibit 1: List of Opt-Ins Who are Settlement Class Members**

|     | Last Name | First Name |
|-----|-----------|------------|
| 177 | Williams  | Eric       |
| 178 | Wilson    | Aaron      |
| 179 | Wilson    | Brittany   |
| 180 | Wingate   | Jerry      |
| 181 | Wingate   | Rodney     |
| 182 | Wise      | James      |
| 183 | Wojcicki  | Kevin      |
| 184 | Wolf      | Chris      |
| 185 | Zaremba   | Paul       |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAUREN GARNICK, TSHACHA ROMEO,
and COREY HANVEY, Individually, and on
behalf of all others similarly situated,

        Plaintiffs,

                                    Case No. 8:20-cv-01474-T-35TGW

v.

VERIZON CONNECT FLEET USA, LLC,

        Defendant.

_____

## [PROPOSED] ORDER APPROVING SETTLEMENT AND DISMISSAL OF LAWSUIT WITH PREJUDICE

After a review of the Parties' Joint Motion for Approval of FLSA Collective Action Settlement and the Settlement Agreement, the Court is satisfied that the settlement reached is a "fair and reasonable resolution of a bona fide dispute" under the Fair Labor Standards Act. *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982); 29 U.S.C. § 216.

ACCORDINGLY, it is hereby ORDERED AND ADJUDGED as follows:

1.      The Settlement Agreement between Named Plaintiffs Lauren Garnick, Tshacha Romeo, Corey Hanvey ("Named Plaintiffs") and the Opt-In Plaintiffs identified in Exhibit 1 of the Settlement Agreement (collectively, with Named Plaintiffs, referred to as "Plaintiffs"), on one hand, and Verizon Connect Fleet USA LLC ("Defendant" or "Verizon Connect"), on the other, is

APPROVED, including, but not limited to, the Settlement Payments to Plaintiffs and attorneys' fees and costs to Plaintiffs' Counsel.

2.     The General Release of Known and Unknown Claims by the Named Plaintiffs, as set forth in Section 7.1 of the Settlement Agreement, is APPROVED.

3.     The Opt-In Plaintiff Release, as set forth in Section 7.2 of the Settlement Agreement, is APPROVED.

4.     The Court DISMISSES WITH PREJUDICE, the 185 Plaintiffs listed in Exhibit 1 to the Settlement Agreement.

5.     The Court DISMISSES WITH PREJUDICE this action and all claims that were raised or that could have been raised in this action.

6.     Without affecting the finality of this Order in any way, the Court retains continuing and exclusive jurisdiction over the Parties to this action for the purpose of the administration and enforcement of the Settlement Agreement.

IT IS SO ORDERED.

Dated: _____          _____
                                    Honorable Mary S. Scriven
                                    U.S. District Court Judge